GARIUP ET AL. *v.* STERN ET AL.

[No. 1069S235.   Filed August 27, 1970. Rehearing denied December 7, 1970.]

*Saul I. Ruman,* of Hammond, for appellants.

*Joel C. Levy,* for appellee School City of Hammond, *G. Edward McHie,* for appellee Hammond Central School Building Corp.

DeBruler, J.—This is an appeal from a decision of the trial court granting appellee Board of School Trustees' of the School City of Hammond petition, filed pursuant to Acts 1967, ch. 357, § 5, being Burns Ind. Stat. Ann. § 3-3305, requesting the

trial court to order appellants, plaintiff in the action below, to post bond in the amount of $150,000, or suffer dismissal of the action. Appellants did not post bond and their action was dismissed.

Appellants first contend that the trial court erred in granting the petition and in so doing, finding that the Public Lawsuit Statute, Acts 1967, ch. 357, Burns Ind. Stat. Ann. §§ 3-3301 to 3-3308 applies to this case. The resolution of this issue must be made upon a determination of the legal status of the parties and of the nature of the plaintiffs' claim. *City of Elkhart* v. *Curtis Realty Company* (1970), 253 Ind. 619, 256 N. E. 2d 384.

The complaint consists of five pleading paragraphs. These contained allegations that the appellee School Board and architect utilized illegal bidding procedures in violation of the public and private rights of appellant Gariup Construction Co., Inc., and that the appellee School Board had, or was threatening to indebt itself in excess of the limitation set by Art. 13, § 1, of the Indiana Constitution. These five paragraphs prayed for attorney fees, injunctive relief, and actual and punitive damages.

The only interest of the appellants Brown, Redden and Drake, as revealed by the complaint is that of taxpayers and citizens of Hammond, Indiana, and patrons of the Hammond Public School system. On the other hand appellants Alex Gariup and Gariup Construction Company, Inc., as unsuccessful bidders on a project to construct a new school building, are shown to have a completely different interest in this action.

The evidence at the hearing showed that Gariup Construction Co., Inc., was a good faith bidder on a school construction project planned by the appellee School Board at a cost of approximately $2,300,000 dollars. A bidder for a public contract is required by the specifications and the statutes governing the bidding procedures on public contracts to do the following in addition to submitting its written bid: 1) To submit a financial statement under oath; 2) To submit a Bidder's

Certificate of non-collusion; 3) To submit a bid bond or certified check in an amount equal to 5% of the total bid. If the successful bidder fails to execute the contract within a limited time the bid bond is forfeited as liquidated damages.

The evidence presented showed that in addition to these formal requirements a bidder spends considerable money in preparing a bid on a public project and often attends pre-bid conferences with the architect. From this brief description it is obvious that a bidder for a public contract seeking to have the award of the contract enjoined or voided by the trial court on the grounds of fraud or illegal procedures is in an entirely different position than a taxpayer or citizen seeking similar relief solely for the general benefit of all taxpapers. The bidder invests considerable time, effort and money in submitting a bid and is pecuniarily damaged if illegal procedures are used to his disadvantage. In addition to these factors, the Public Lawsuit Statute defines a "Public Lawsuit" as follows:

> " 'Public Lawsuit' shall mean any action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing, and shall mean any action to declare invalid or enjoin the creation, organization or formation of any municipal corporation. This definition, as used in this act, shall not be construed to broaden any right of action as is now validly limited by applicable law. Acts 1967, ch. 357, § 1, Burns Ind. Stat. Ann. § 3-3301 (b)"

A bidder's suit seeking judicial review of the bidding procedures utilized by a public authority does not fall within that category of suits questioning the validity of "construction, financing or leasing" as defined above. For these reasons we hold that a suit by a bidder on a public project seeking court review of bidding procedures is not "a public lawsuit." It is a private lawsuit.

However, the suit brought by these appellants is a combination of the private lawsuit of Alex Gariup and the Gariup Construction Co., Inc., and the public lawsuit of the plaintiffs Brown, Redden and Drake. The causes were commingled in each pleading paragraph and as such were not susceptible of separate treatment by the trial court. It was the decision of the plaintiff Gariup Construction Co., Inc., to so combine its suit and from this record it appears that this decision was based upon a desire to strengthen its position and to bring an an attack upon a broader front. In these circumstances the trial court was correct in applying the Public Lawsuit Statute to this suit.

The appellants next contend that their evidence was sufficient to avoid the requirement that they put up a bond or suffer dismissal pursuant to Burns § 3-3305, and the trial court committed error in not so finding. Burns § 3-3305 reads in relevant part:

> "A hearing shall be had on such petition in the same manner as the hearing on temporary injunctions under Acts 1881 (Spec. Sess.) c. 38. If at the hearing the court determines that the plaintiff can not establish facts which would entitle him to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damage and costs which may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails."

We agree with appellants that a hearing is contemplated under this section, and not a trial, and that plaintiff need not establish such a case as would entitled them to a judgment after a trial on the merits. We have recently so held in *Bruce Johnson, et al.* v. *Tipton Community School Corp. et al.* (1970), 253 Ind. 460, 255 N. E. 2d 92. In that case we held that plaintiff in a hearing under Burns § 3-3305 is only required to present evidence to establish that:

> ". . . the question to be tried was a substantial one, proper for investigation by a court of equity. It is not necessary

that a case should be made out as would entitle appellants to relief on the final hearing; . . . ."

The determination that a plaintiff has satisfied that requirement is to be made by the trial court. In reviewing his decision this court has a different and more limited role. It has been said that we review a ruling on a request for temporary injunction solely to determine whether the ruling of the trial court was an "abuse of discretion." *Bruce Johnson, et al* v. *Tipton Community School Corp., et al., supra; Green* v. *Bd. of Commissioners of Scott Co.* (1969), 251 Ind. 535, 242 N. E. 2d 844; *Southport Bd. of Zoning Appeals* v. *Southside Ready Mix Concrete, Inc.* (1961), 242 Ind. 133, 176 N. E. 2d 112; *Ind. Cancer Society, Inc.* v. *Marion Co. Cancer Society, Inc.* (1959), 240 Ind. 89, 161 N. E. 2d 769; *State ex rel. Bd. of Medical Registration and Examination* v. *Henry* (1951), 229 Ind. 219, 97 N. E. 2d 487; *State ex rel. Bd. of Medical Registration and Examination* v. *Hayes* (1949), 228 Ind 286, 91 N. E. 2d 912. In reviewing the trial court finding that appellants failed to introduce sufficient evidence to sustain their burden of showing that their claim was a substantial one, proper for investigation by a court of equity, we are reviewing a negative finding of fact. We will find that the trial court abused its discretion in making this negative finding if, looking to the evidence and all reasonable inferences therefrom which tend to support the ruling of the trial court, that evidence leads to but one conclusion and the trial court reached a different one. We now will proceed to examine the evidence bearing upon the issues before the trial court to determine whether the ruling granting the petition and setting bond constituted an abuse of discretion. *Bruce Johnson, et al.* v. *Tipton Community School Corporation, supra.*

Appellants contend that the trial court erred in failing to find the evidence sufficient to support their allegation that appellees violated the statutes controlling bidding procedures on public contracts, Acts 1913, ch. 228, § 1, Burns Ind. Stat. Ann. § 53-104; Acts 1947, ch. 306, §§ 1, 2, 3, as last amended

by Acts 1961, ch. 121, § 1, Burns Ind. Stat. Ann. §§ 53-108 to 53-110. The following narrative is the evidence bearing on this issue.

The appellee School Board adopted specifications for the construction of the proposed Central Middle School and published notice on April 24, 1969, and May 1, 1969, that sealed bids on the project would be received until May 5, 1969. These specifications called for plain exterior concrete panels, but they also included alternate G-6, which read:

"—ALTERNATE G-6—PANEL FINISH—State amount to be added to the base bid to provide a sandblasted finish on all exposed surfaces of pre-cast concrete panels."

On April 28, 1969, the appellee Carlson-Ried Builders, later to become the successful bidder, inquired of the appellee architect Malcomb Williams, whether exposed aggregate panels could be used in the bid to satisfy the requirements of "alternate G-6" which utilized a sandblasting technique to expose the aggregate. In response to this inquiry, the appellee Williams prepared an addendum to the specifications, designating it addendum G-3 which read:

"Alternate G-6—Add the following: In lieu of sandblasting, Contractors may provide an expose pea-gravel (3/8" nominal) face aggregate."

This addendum was mailed to all certified bidders, including appellant Gariup Construction Co., Inc., which received it on May 1, 1969. Addendum G-3 was not specifically adopted by the appellee School Board prior to the opening of the bids on May 5, 1969. The appellee Williams testified that he had authority under the following provision of the Instructions to Bidders section of the specifications to issue Addendum G-3:

"EXPLANATIONS AND ADDENDA—If any person contemplating submitting a bid is in doubt as to the true meaning of any part of the Plans, Specifications or other proposed Contract Documents, he shall submit to the Architect a written request for an interpretation thereof. The

person submitting the request shall be responsible for its prompt delivery, and such request should be delivered to the Architect at least seven days before the opening of bids. Any interpretation of the proposed documents will be made only by an addendum duly issued. A copy of such addendum will be mailed or delivered to each person receiving a set of such Contract Documents and to such other prospective bidders as have requested that they be furnished with a copy of each addendum. Any addendum issued during the time of bidding shall be included in the bid,, and in closing a Contract will become a part thereof.

Any verbal information obtained from or statements made by a representative of the Owner or Architect at the time of examination of the Contract Documents of Site shall not be construed as in any way amending the Contract Documents. Only such corrections or addenda as are issued in writing to all Bidders shall become a part of the Contract. Neither the Owner nor the Architect will be responsible for verbal instructions."

Appellants contend that Addendum G-3 is a change in the specifications which was not legally adopted by the appellee School Board, and that the inclusion of this new product in the specifications without prior Board approval violated the following provision of the Public Contracts Statute, Burns § 53-108:

". . . It shall be the duty of the board . . . to adopt plans and specifications and award a contract for such public work or improvement to the lowest and best bidder who submits a bid for the performance thereof: . . . ."

The trial court in granting appellee's petition, found in effect that the appellants had failed at the hearing to present sufficient evidence of violation of this provision. The decision of the trial court was correct. The architect had the authority quoted above under the adopted specifications to issue addenda in answer to inquiries by bidders which would interpret and give further meaning to the specifications themselves. The purpose of Alternate G-6 was to provide an exposed aggregate exterior finish on the pre-cast concrete panels. Alternate G-6 contemplated that the aggregate would be exposed by a sand-

blasting process, Addendum G-3 provided that in lieu of a sandblasting process, other processes could be used to expose the aggregate. The evidence showed that appellee Federal Cement intended to expose the aggregate on their panels by the "Retardant" process. The type of exterior wall was not changed by G-3; it merely indicated that a different process to expose the aggregate was acceptable. The evidence showed that the cost of exposing the aggregate was a small percentage of the total cost of the panels to be used in the project. In addition to G-3 there were more than 100 addenda to the specifications and plans of the Central Middle School. Many of them involved comparable interpretations. One such addendum states that where the word "vent" appears in certain specifications it shall be construed to mean "Model 88 Vent-a-strip manufactured by Rome Comfort Products, Princeville, Illinois". And still another contains the following: "Interior Stucco finish shall be applied where 'aggregate finish' is noted on the details". The evidence before the trial court showed that the architect was acting within the scope of his authority by construing the specifications alternate G-6 to permit exposed aggregate panels to be bid, as well as plain panels which were sandblasted to expose the aggregate.

Appellants next argue that the trial court erred in failing to find that the evidence was sufficient to support the appellants' allegations that appellee Carlson-Ried Builders was a "favored" bidder and the resulting advantage to appellee Carlson-Ried impeded free, open and competitive bidding in violation of the Public Contracts Statute. *Feigel* v. *City of Evansville* (1958), 128 Ind. App. 698, 150 N. E. 2d 263. Basic to appellants' allegation of favoritism are the following facts established by the evidence: (1) appellee Carlson-Ried Builders and appellee Federal Cement are owned and operated by members of the same family; (2) appellee Federal Cement was the only local manufacturer of the exposed aggregate panels that was designated in the specifications; (3) local manufacturers were to be preferred if the cost was equivalent;

(4) appellee Williams, upon request from Carlson-Ried, issued addendum G-3 to alternate G-6, which addendum permitted using exposed aggregate panels in lieu of sandblasting plain panels to expose the aggregate as specified in G-6; (5) Carlson-Ried was the only bidder to use G-3, permitting a bid $5,000 below the base bid; (6) the other bidders used alternate G-6 unmodified by G-3, resulting in bids of approximately $7,000 over the base bid; (7) Gariup Construction Co. was the low base bidder; (8) upon recommendation by architect Williams, the Board chose the exposed aggregate finish specified in G-6; (9) once G-6 was chosen Carlson-Ried was the low overall bidder because it had bid G-6 as modified by G-3 at nearly $12,000 lower than any other bid.

Appellant Gariup Construction received addendum G-3 on May 1, 1970, and argues that *too little time* remained after receipt of the addendum to "investigate the newly specified product" and that appellee Carlson-Ried Builders would have ample time to do so since they already possessed special knowledge of the same product because of their close relationship with appellee Federal Cement.

The evidence shows that on May 5, 1969, and in time to include it in their bid, appellant Gariup Construction received the same sub-bid from appellee Federal Cement for the exposed aggregate panels described in addendum G-3 that appellee Carlson-Ried Builders had received, namely a bid of $5,000.00 deduct, the very amount bid by the allegedly "favored" bidder Carlson-Ried Builders on addendum G-3.

There is no evidentiary support for appellants' contention that the *special knowledge* which appellee Carlson-Ried Builders obviously had concerning the panels manufactured by appellee Federal Cement favored Carlson-Ried as a bidder.

The evidence showed that appellant Gariup Construction Co., Inc., rejected the $5,000 deduct sub-bid of appellee Federal Cement because they entertained doubts as to whether panels at that price would meet the standards set forth in the specifi-

cations. It is true that appellee Carlson-Ried Builders had special knowledge of the characteristics of Federal's panels, but appellant Gariup Construction had all the knowledge they needed to have to make a decision on whether to bid on alternate G-6 on the basis of the sandblasting process or on the basis of the exposed aggregate panels designated in addendum G-3. Appellant Gariup Construction Co., Inc., knew that the adopted specifications designated appellee Federal Cement as an acceptable and approved manufacturer of the addendum G-3 panels and appellant Gariup Construction had a sub-bid from that specified manufacturer. They needed no further knowledge of Federal's product. They needed no additional time to investigate the characteristics of Federal's product. If the panels ultimately supplied by Federal did not meet the specifications the architect or engineer would be responsible and certainly not the appellant Gariup Construction Co., Inc.

The only advantages actually inferable from the evidence, to appellee Carlson-Ried Builders from its close relationship with appellee Federal Cement are the obvious minor conveniences from their close physical proximity and joint control of employees. Appellants' contention that appellee Carlson-Ried Builders was in a position to obtain an advantageous price on exposed aggregate panels from appellee Federal Cement is wholly without support in the evidence.

Appellant further argues that appellee Carlson-Ried Builders is "favored" because of the fact that appellee Federal Cement and Carlson-Ried Builders are jointly owned and operated and appellee Federal Cement is in favorite position itself due to the fact that it is the sole local manufacturer of the exposed aggregate panels, named in the specifications, and the following specification in the general conditions require each bidder to give preference to appellee Federal Cement:

"4.4.7 Each Contractor shall give preference to the employment of local labor and the purchase of materials locally where they are available at prices equivalent to those obtainable elsewhere."

No inference of favoritism is warranted here. The evidence shows that appellee Federal Cement treated both Carlson-Ried and Gariup Construction equally and in addition the bidders were not required by the specifications to adhere to the list of designated manufacturers under the following specification:

"4.4.6 Wherever materials are specified using names of specific manufacturers, the purpose is to establish a standard of quality and design and not to limit competition. Contractors desiring to use materials of manufacturers other than those specified shall indicate such material, manufacturer, and change of price if any, in the space provided under the heading 'Variations From Materials Specified' in the Bid Sheets. *PROPOSALS OF CONTRACTORS SHALL BE BASED ONLY ON MATERIALS SPECIFIED.* Variations, if accepted will be incorporated in the Contract and the Contract Price adjusted accordingly. No other material substitutions will be considered after the Contract has been signed."

Other manufacturers of exposed aggregate panel were shown to exist in the Calumet area in addition to appellee Federal Cement who were not specified as manufacturers.

The evidence on this point demonstrates conclusively that appellant Gariup Construction and appellee Carlson-Ried Builders had an equal opportunity to investigate the price, quality and availability of exposed aggregate panels manufactured by companies other than appellee Federal Cement.

Appellants next urge that the "favored" bidder status of the appellee Carlson-Ried Builders is shown by the fact that of the total of four bids received for Central Middle School, *only appellee Carlson-Ried Builders* bid alternate G-6 as modified by addendum G-3 at a deduct amount, while the remaining three bidders all bid alternate G-6 on the basis of a sandblasted finish at an add-on amount. No such showing is made here, since the complaining bidder here on appeal had an opportunity, equal to that of the appellee Carlson-Ried Builders, to bid alternate G-6, addendum G-3 at the same deduct figure.

Appellants next contend that the "favored" bidder status of appellee Carlson-Ried Builders is demonstrated by the fact that appellee Carlson-Ried Builders did not submit the lowest base bid and became the lowest overall bidder only by the decision of the appellee School Board to select alternate G-6 to include in the project, and the consequent reduction of the overall bid of appellee Carlson-Ried Builders by $5,000.00. We see no inference of favoritism or irregularity here for the appellee School Board to select the lowest overall bidder and not the lowest base bidder, since their decision does effect a savings. In addition, the evidence clearly shows that the use of alternatives as a technique in bidding procedure is commonly used in Lake County, Indiana, and in situations where the intended total expenditure is limited and the offeror desires to provide itself with additional choices and to investigate the additional cost of those additional choices without binding itself absolutely.

Appellants urge that the trial court committed error in not finding that the evidence was sufficient to show that the appellee School City of Hammond was in violation of the debt limit established by Article 13, Sec. 1 of the Indiana Constition, which says:

> "Limitation on indebtedness—Excess void.—No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporations, shall be void ..."

It is true that if the appellee School Board had entered a contract for the construction of the Central Middle School it would have indebted itself beyond the 2% debt limit. However there was no evidence before the court that the appellee School Board had in any manner incurred a debt of any kind with

respect to the Central Middle School. At the time of the hearing no construction contract had been awarded or executed by anyone. In order that the appellee School Board not exceed the debt limit, appellee Hammond Central School Building Corporation had previously been created for the purpose of selling bonds, contracting with a builder to construct the new school facility and entering into the traditional lease-rental agreement with the School City of Hammond. It is certainly true as appellants point out that the School City of Hammond had adopted the specifications, received the bids and was generally taking the preliminary steps toward awarding and executing a final construction contract. However appellees point out that the appellee School Board only went so far as to adopt the following motion:

> "Trustee Eggers moved to accept the Administration's recommendation in the awarding of these bids."

The only reasonable interpretation of the evidence before the court was that the appellee School Board was taking the preliminary steps toward awarding and executing a contract on behalf of the appellee Hammond Central School Building Corporation, and that after approval of the recommendation, the appellee School Board intended to forward its recommendation to the appellee Hammond Central School Building Corporation for further action.

The appellants next urge that the trial court erred in setting bond in the sum of $150,000 because the evidence was insufficient to support the finding of damages. All of the evidence on this issue amply supports the trial court finding. Appellees introduced in evidence the affidavits of three licensed Indiana architects, Bachman, Bernard and Turner, whose experience as practicing architects totaled 84 years, who stated in turn that the construction costs in Lake County, Indiana, were presently rising at a rate of between .67% to 1% per month and who further stated in turn that over the next 3 to 6 months such costs could rea-

sonably increase a total of between 6% and 8%. The witness O'Dell, a banker with experience in bond transactions stated that interest rates on bonds had risen steadily in the period January 2, 1969, to July 24, 1969, from 4.85 to 5.86. This evidence coupled with the fact that the cost of this project is in excess of 2 million dollars is sufficient to support the finding of the trial court.

Appellants next contend that the Public Lawsuit Statute is unconstitutional because it is vague and indefinite. The appellants' argument concerns Burns § 3-3305 which in pertinent part reads:

"In the event such bond is not filed by the plaintiff with sureties approved by the court within ten (10) days after such order is entered the suit shall be dismissed. Either plaintiff or defendant may appeal such order to the Indiana Supreme Court within such ten (10) day period by notice of appeal and a statement of error in the same manner as is provided in a petition for mandate or prohibition. The Supreme Court may stay the lower court order pending its own decision, may set a bond to be filed by the plaintiff in connection therewith, may modify the order of the lower court, or may enter its order as a final order in a case. In the event no bond is filed as provided in this section the public lawsuit shall be dismissed and no court shall have further jurisdiction of the public lawsuit or any other public lawsuit involving any issue which was or could have been raised therein."

Appellants argue that that section contemplated the posting of bond within the 10 day period or an appeal as an alternative, so that the action would not be dismissed if either a bond or an appeal were undertaken within the 10 day period. However, in *State ex rel. Haberkorn* v. *DeKalb Circuit Court* (1968), 251 Ind. 283, 241 N. E. 2d 62, this Court extended the time for taking an appeal to 30 days while retaining the provision requiring a bond or dismissal within 10 days, with the result that the action may be dismissed even though an appeal is taken.

Appellants' only argument as to why this procedure is vague

and indefinite is an allegation that the trial court originally issued an order to post bond or be dismissed within 10 days, then agreed to extend the time to 30 days and finally the trial court changed it back to 10 days, dismissing appellants' action when no bond was filed within the 10 days.

This does not show that the statutory procedure, as modified by *Haberkorn,* is in any way vague, indefinite, or uncertain. That determination can only be made by examining the modified statute and upon doing that it is clear that there is absolutely nothing vague or indefinite about the procedure. The appellants were to file a bond within 10 days or suffer dismissal; and they had 30 days to file their appeal. If the appellants were to prevail on this appeal they would of course be entitled to re-instatement of their action. Aside from vagueness, the validity of this procedure was established in *Haberkorn* and we see no reason why that decision should be changed.

In light of our decision today on the merits of this case, the motion of appellees, Warren Holmes & Co. and Malcomb Williams, is now denied.

The decision of the trial court granting the petitioners' motion to dismiss is affirmed and the judgment of the trial court is affirmed.

Hunter, C.J., Arterburn, Givan, and Jackson, J.J., concur.

NOTE.—Reported in 261 N. E. 2d 578.