**CITY OF FORT WAYNE,**
**Appellant–Defendant,**

v.

**PIERCE MANUFACTURING,**
**INC., Appellee–Plaintiff.**

**No. 90A02–0512–CV–1155.**

Court of Appeals of Indiana.

Sept. 5, 2006.

---

R. Mark Keaton, Fort Wayne, IN, Attorneys for Appellant.

James P. Fenton, Eilbacher Fletcher, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

The City of Fort Wayne ("City") appeals the trial court's grant of a motion for summary judgment filed by Pierce Manufacturing, Inc., ("Pierce") and the trial court's denial of a motion to dismiss and a motion for summary judgment filed by the City. The City raises two issues, one of which we find dispositive and restate as whether the trial court erred by denying the City's motion to dismiss based upon Pierce's lack of standing to contest the City's award of a contract to another bidder.[1] We reverse.[2]

---

1. The other issue raised by the City is whether the trial court erred by granting Pierce's motion for summary judgment and denying the City's motion for summary judgment regarding whether the City complied with the Public Purchasing Statute, Ind.Code §§ 5–22.

2. We remind the parties that Ind. Appellate Rule 50(A)(2)(f) provides that the appellant's Appendix shall contain copies of "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal." Similarly, Ind. Appellate Rule 50(A)(3) provides: "The contents of the appellee's Appendix shall be governed by Section (A)(2) of this Rule, except the appellee's Appendix shall not contain any materials already contained in appellant's Appendix. The Appendix may contain additional items that are relevant to

either issues raised on appeal or on cross-appeal."

Recently, when an appellant failed to provide the documents designated to the trial court by the appellee, we determined the appellant waived his claim that the trial court erred by granting summary judgment. *See Yoquelet v. Marshall County*, 811 N.E.2d 826, 830 (Ind.Ct.App.2004) (holding that the appellant failed to prove that the trial court erred by granting summary judgment where the appellant did not include any of the designated evidence or summary judgment materials). Additionally, while we prefer to decide cases on their merits, we have affirmed or dismissed an appeal based upon the appellant's failure to provide us with the necessary summary judgment materials. *See Hughes v. King*, 808 N.E.2d 146, 148 (Ind.Ct.App.2004) (dismissing appeal of grant of summary judg-

The relevant facts follow. In 2004, the City wanted to purchase fourteen fire trucks and decided to award the contract through the use of a request for proposal ("RFP"). The RFP was issued on March 14, 2004, and provided, in part:

**Section 4.0    Evaluation**

4.1    The following criteria will be evaluated when reviewing the proposals:

a.    Technical Criteria: Proposals will be evaluated according to completeness, content, degree to which matches the specifications, etc.

b.    Past Experience. Proposals will be evaluated according to completeness, content, and evidence of reliability with other Governmental entities.

c.    Financial Criteria: All relevant cost factors and possible financing for this proposal.

Appellant's Appendix at 81.

Although three proposals were submitted, one was deemed not responsive. The remaining two responsive bids were made by Pierce and American LaFrance Corporation ("ALF"). Pierce and ALF were then invited to attend in-person negotiations at the City's offices in Fort Wayne. Prior to the negotiations, the City prepared a detailed matrix to evaluate the bids. The matrix contained eleven factors and the relative weight to be accorded to each factor in evaluating the bids. The factors and their relative weights were as follows:

| | |
|---|---|
| Adherence to Specs | 20% |
| Cost | 24% |
| Warranty | 10% |
| Delivery | 13% |
| OEM P/N Disclosure | 5% |
| Pre–Positioned Spare Parts | 5% |
| Technical Support | 5% |
| Training | 5% |
| End User Experience | 8% |
| References | 2% |
| Litigation and Financial Issues | 3% |
| Total | 100% |

*Id.* at 82. However, the bidders were not provided with this matrix prior to the negotiations.

Although the RFP called for independent front suspension systems in the fire trucks, the City allowed ALF to substitute an air ride system as a functional equivalent. Additionally, at the start of the negotiations, Pierce's bid was approximately $344,635 lower than ALF's price. A City representative then told ALF that its price was "not competitive" or that its price was "[n]ot competitive with the target pricing" prepared by the City. Appellee's Appendix at 36; Appellant's Appendix at 68. No such statement was made to Pierce. In the next round of negotiations, ALF reduced its price by more than $344,635. After the negotiations, the matrix resulted in a score of 43.3 points to ALF out of a possible score of 50 points and a score of 42.4 points to Pierce. The City awarded the contract to ALF.

Pierce filed a complaint against the City and alleged that the City violated the Public Purchasing Act, Ind.Code §§ 5–22. Specifically, Pierce alleged that the City violated: (1) Ind.Code § 5–22–9–2 by failing to include a statement concerning the

---

ment when appellant failed to include all designated evidence in the appendix).

Here, neither party included copies of Pierce's motion for summary judgment, memorandum, or designation, the City's motion to dismiss, the City's cross motion for summary judgment or designation, or Pierce's reply brief, designation of additional evidence, or

brief in opposition to the City's cross motion for summary judgment in their appendices. The parties did include portions of evidence that we assume they designated to the trial court. During oral argument, the parties conceded that we can decide this case based upon the documents provided in the appendices.

relative importance of price and other evaluative factors in the RFP; (2) Ind. Code § 5–22–9–7 by taking into consideration factors not specified in the RFP; (3) Ind.Code § 5–22–9–10 by using factors and criteria in its evaluations other than those specified in the RFP; and (4) Ind. Code § 5–22–9–9 by failing to accord Pierce "fair and equal treatment with respect to any opportunity for discussion and revision of proposals." Appellant's Appendix at 9. Pierce asked that the award of the contract to ALF be set aside and that the City be compelled to reissue a lawful RFP and comply with the statutory procedures.

Pierce filed a motion for summary judgment, and the City filed a motion to dismiss for lack of subject matter jurisdiction and a cross motion for summary judgment. After a hearing, the trial court entered an order denying the City's motion to dismiss, granting Pierce's motion for summary judgment, and denying the City's motion for summary judgment. The trial court ordered that the City's "determination to award the Contract, pursuant to Request for Proposal # 2073, to [ALF], is hereby SET ASIDE" and remanded the case to the City "with instructions to conduct further proceedings in strict conformity with Indiana statute." Appellant's Appendix at 4.

■ The issue is whether the trial court abused its discretion by denying the City's motion to dismiss based upon Pierce's lack of standing to contest the City's award of a contract to another bidder. Although the City apparently filed its motion to dismiss under Ind. Trial Rule 12(B)(1) for lack of subject matter jurisdiction, motions to dismiss for lack of standing are properly brought under Ind. Trial Rule 12(B)(6) for failure to state a claim. *Huffman v. Office of Envtl. Adjudication,* 811 N.E.2d 806, 813 (Ind.2004). Therefore, we will deter-

mine whether the trial court's denial of the City's motion to dismiss is sustainable under that rule. When reviewing a ruling on an Ind. Trial Rule 12(B)(6) motion, we must take as true all allegations upon the face of the complaint. *Id.* at 814. We may dismiss only if the plaintiff would not be entitled to recover under any set of facts admissible under the allegations of the complaint. *Id.* Upon review, we view the pleadings in a light most favorable to the nonmoving party and draw every reasonable inference in favor of that party. *Id.*

The City argues that the trial court should have granted its motion to dismiss because an unsuccessful bidder lacks standing to sue based upon 100 years of Indiana jurisprudence. On the other hand, Pierce argues that the trial court properly denied the City's motion to dismiss based upon the language of the Public Purchasing Act, Ind.Code § 5–22.

Resolution of this issue requires that we interpret the Public Purchasing Act. When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). Thus, we need not defer to a trial court's interpretation of the statute's meaning. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Center, Inc. v. Steele,* 766 N.E.2d 699, 703–704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin,* 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking,* 744 N.E.2d at 942. However, if a statute is susceptible to multiple interpretations,

we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin,* 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.*

Pierce brought its claims against the City under Indiana's Public Purchasing Statute, Ind.Code § 5–22. The Public Purchasing Statute was enacted in 1997 and, in general, governs "every expenditure of public funds by a governmental body" subject to certain exceptions and limitations. Ind.Code §§ 5–22–1–1, 5–22–1–2, 5–22–1–3. For example, the Public Purchasing Statute does not apply to public works projects. I.C. § 5–22–1–3(a). Among other things, the statutes provide guidance on competitive bidding procedures, online reverse auctions, and requests for proposals.

The Public Purchasing Statute also contains a chapter dealing with judicial review of "determinations."[3] Ind.Code § 5–22–19. Ind.Code § 5–22–19–1 provides: "The determinations required by this article are final and conclusive, and subject to judicial review under section 2 of this chapter." Section two of the chapter provides:

(a) A person aggrieved by a determination under this article may file a petition for judicial review of that determination in a court of appropriate jurisdiction.

The court shall grant relief only if it determines that a person seeking judicial relief has been substantially prejudiced by a determination that is any of the following:

(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

(2) Contrary to constitutional right, power, privilege, or immunity.

(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

(4) Without observance of procedure required by law.

(5) Unsupported by substantial evidence.

Ind.Code § 5–22–19–2. Further,

(a) If the court finds that a person has been substantially prejudiced by a determination, the court may set aside the determination. The court may remand the case to the governmental body for further proceedings and compel an action by the governmental body that has been unreasonably delayed or unlawfully withheld.

(b) A court may not award damages in an action under this chapter.

Ind.Code § 5–22–19–5. The chapter also notes that "[a]n Indiana taxpayer has standing to":

(1) challenge a determination made under IC 5–22–15–25(d); and

(2) enforce a contract provision required by IC 5–22–17–14 if the contract is related to steel products (as defined in IC 5–22–15–25(a)) or supplies manufactured by steel products.

Ind.Code § 5–22–19–6.

According to Pierce, it is a "person aggrieved" by the City's determination, the statute does not require a "person aggrieved" to be a citizen or a taxpayer, and it has standing to seek judicial review. The Public Purchasing Statute does not define "person aggrieved," and no Indiana court has specifically construed this phrase in the Public Purchasing Statute.

---

**3.** Neither party argues that the award of the contract to ALF was not a "determination" subject to the judicial review provisions of Ind.Code § 5–22–19.

We note, however, that the Indiana Supreme Court has held that an unsuccessful bidder does not have a right to challenge an award of a contract under the Public Purchasing Statute. *See Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336 (Ind.2005), *reh'g denied.* As background to *Natare*, we will first discuss *Shook Heavy & Envtl. Const. Group, a Div. of Shook, Inc. v. City of Kokomo*, 632 N.E.2d 355 (Ind.1994), and *All–Star Const. & Excavating, Inc. v. Board of Pub. Works*, 640 N.E.2d 369 (Ind.1994).

In *Shook*, the Indiana Supreme Court held that "an unsuccessful bidder does not have a cause of action under Indiana law for an injunction prohibiting a city from awarding a public contract to the selected bidder if the unsuccessful bidder's legal theory is that the selected bidder is not the lowest responsible and responsive bidder as required under Ind.Code Ann. § 36–1–9–3 [the Local Government Purchasing Statutes][ [4] ]." *Shook*, 632 N.E.2d at 356–357. The issue arose because the City of Kokomo solicited sealed bids pursuant to Ind.Code § 36–1–9 for the construction of a municipal sludge composting facility. *Id.* at 357. Shook submitted an unsuccessful bid and then filed suit against the City of Kokomo "seeking to enjoin the award of the contract on the basis that deficiencies in the bid of the apparent low bidder caused that bidder's bid to be not the lowest responsible and responsive bid." *Id.* The Indiana Supreme Court noted that the legislature had provided a statutory right to enforce Ind.Code § 36–1–9 under two circumstances. *Id.* First, Ind.Code §§ 34–4–17 [5] (the "Public Lawsuit Statute") permitted "citizens or taxpayers of the municipality in question to bring an action questioning the validity or construction of any public improvement by the municipality." *Id.* at 357–358. The Court noted that the " 'public lawsuit' provisions are grounded in the historical principle that competitive bidding statutes are 'enacted for the benefit of property holders and taxpayers and not for the benefit or enrichment of bidders.' " [6] *Id.* at 358. Second, Ind.Code § 24–1–2–7, the Indiana Antitrust Act, "confers on private individuals the right to challenge the award of a government contract where the governmental entity and successful bidder have engaged in collusion or fraud." *Id.*

The Court concluded:

[T]he legislature has not provided any statutory basis upon which an unsuccessful bidder that is not a citizen or taxpayer of the municipality in question and where collusion or fraud in the award of the contract is not alleged can

---

4. Repealed by Pub.L. No. 49–1997, § 86 (eff. July 1, 1998).

5. Repealed by Pub.L. No. 1–1998, § 221 (eff. July 1, 1998); *see now* Ind.Code §§ 34–13–5.

6. The Court noted that:

This principle was apparently first acknowledged in our state in *Lane v. Boone County Commissioners* (1893), 7 Ind.App. 625, 626–7, 35 N.E. 28, 29, where an unsuccessful bidder on a road construction contract sued for damages on grounds that the county was liable to the plaintiff for failure in the performance of official duties on the basis that the plaintiff was the lowest and best bidder. The plaintiff also alleged favoritism, fraud, and collusion in the award of the contract. The Court of Appeals held that "the officers whose duty it was to let the contract might have been enjoined from awarding it to the other bidders, or they might have been compelled, by mandate in the proper court, to award the contract to the appellant. Such a proceeding, however, could have been instituted only by some property-owner effected by the assessments. The statute cited was not enacted for the benefit of bidders, but for the protection of the property-owners effected [sic] by the improvement, and, possibly, also, for the benefit of the general public." *Id.*
*Shook*, 632 N.E.2d at 358 n. 4.

bring an action seeking to enjoin the award of the contract. Furthermore, we believe that there is a strong inference that the legislature specifically intends that there be no cause of action, such inference being drawn from the fact that the legislature has provided a specific appeal procedure for certain municipal decisions but not for decisions awarding contracts under [Ind.Code § 36–1–9].

*Id.* at 359. Thus, "[a]n unsuccessful bidder could challenge the award of a contract under either of these two statutes but only if, in the first case, the unsuccessful bidder was a citizen or taxpayer of the municipality or, in the second case, the unsuccessful bidder alleged collusion or fraud." *Id.* at 358. The Court held that neither of these circumstances applied to Shook because Shook was not a citizen or taxpayer of Kokomo and did not allege collusion or fraud. *Id.*

The Court also found no basis in Indiana common law for such a cause of action. *Id.* at 360. Further, although Shook alleged that the violations of Ind.Code § 36–1–9 violated its state constitutional due process rights under article I, section 12, of the Indiana Constitution, the Court noted that "[f]or a person to have a constitutional right under article I, section 12, to maintain a cause of action for injury done to the person in the person's property, the plaintiff must have allegedly suffered some injury to a protected property interest." *Id.* at 361. Shook's constitutional claim failed because Shook had "no protected property interest in the City following the procedures of [Ind.Code § 36–1–9]." *Id.* at 361–362.

Similarly, in *All–Star*, the contractor submitted a bid to the City of Kendallville for the construction of a water main. *All–Star Const.*, 640 N.E.2d at 369. The solicitation and award of the contract was governed by Ind.Code § 36–1–12–4. *Id.* Al-though All–Star was the lowest bidder, the City awarded the contract to another bidder. *Id.* at 370. All–Star filed a complaint alleging that the City committed constructive fraud and that the City violated its rights to equal protection. *Id.* The trial court entered judgment in favor of the City, and on appeal, the Indiana Supreme Court concluded:

All–Star has no standing to sue the City for any violation of Indiana Code § 36–1–12–4. As we explained in *Shook*, only citizens or taxpayers of the municipality in question may challenge the award of a contract under that statute. All–Star is neither. There is simply no basis in Indiana upon which All–Star could seek relief under the statute.

One need not be a citizen or a taxpayer of the municipality, however, to maintain an action for fraud or collusion in the award of a contract. Ind.Code § 24–1–2–7 (1993). Although All–Star alleged constructive fraud, there was simply no evidence at trial that the City was engaged in fraud or collusion. The trial court appropriately entered judgment for the City.

*Id.* (internal citations omitted). The Court also rejected All–Star's due process and equal protection constitutional arguments. *Id.* at 371.

Most recently, the Indiana Supreme Court considered an unsuccessful bidder's challenge in *Natare*, 824 N.E.2d at 337. There, Natare submitted a bid to the Brownsburg School Corporation for the construction of a fine arts and swimming pool addition. *Natare*, 824 N.E.2d at 337. Natare's bid was rejected, and Natare filed a complaint against the School and others "alleging that the three had conspired to exclude Natare from consideration as a supplier for the pool and bulkhead in violation of the provision of the Indiana Antitrust Act prohibiting combinations in re-

straint of trade, Indiana Code section 24–1–2–3 (2004)." *Id.* at 338. The School moved for judgment on the pleadings, which the trial court denied. *Id.*

On appeal, the Indiana Supreme Court first addressed the Public Purchasing Statute, Ind.Code §§ 5–22:

> The Public Purchasing laws include provisions addressing contracts by school corporations, and requiring, inter alia, that the contract be awarded to "the lowest responsible and responsive bidder." Ind.Code § 5–22–7–8 (2004). Only a citizen or a taxpayer of a municipality may challenge the award of a government contract under Indiana's Public Purchasing Statute. *See All–Star Constr. & Excavating, Inc. v. Bd. of Pub. Works*, 640 N.E.2d 369, 370 (Ind. 1994); *Shook Heavy & Envtl. Constr. Group v. City of Kokomo*, 632 N.E.2d 355, 358 (Ind.1994). Natare is neither a citizen nor a taxpayer of Brownsburg, and therefore has no claim under that statute. However, this Court has observed that "[o]ne need not be a citizen or a taxpayer of the municipality ... to maintain an action for fraud or collusion in the award of a contract. Ind.Code § 24–1–2–7." *All–Star*, 640 N.E.2d at 370. Accord *Shook*, 632 N.E.2d at 358.

*Id.* at 338–339. The Court then addressed the Indiana Antitrust Act, Ind.Code §§ 24–1–2, and held that the Indiana Antitrust Act did not create a civil treble damages remedy against a government entity. *Id.* at 339–349.[7]

7. This court also recently addressed the standing of an unsuccessful bidder in *Trans–Care, Inc. v. Board of Comm'r of Vermillion County*, 831 N.E.2d 1255, 1258–1259 (Ind.Ct. App.2005). There, Trans–Care filed a complaint for declaratory judgment against the Board of Commissioners of Vermillion County after another bidder was awarded a contract to provide ambulance services. *Id.* at 1257. The trial court granted summary judgment to the County. *Id.* On appeal, we held:

> The primary cases concerning standing in lawsuits such as Trans–Care's, where a bidder has not been awarded a local government contract, have addressed construction bidding governed by the Indiana Public Purchasing laws now found in Article 5–22 of the Indiana Code. *See Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336, 338–39 (Ind. 2005); *All–Star Constr. & Excavating, Inc. v. Bd. of Pub. Works*, 640 N.E.2d 369, 370 (Ind. 1994); *Shook Heavy & Envtl. Constr. Group v. City of Kokomo*, 632 N.E.2d 355, 358 (Ind. 1994). These cases all clearly hold that only a citizen or taxpayer of the locality may challenge the award of a contract under these laws and the Public Lawsuit Statute, now located at Indiana Code Chapter 34–13–5. The losing bidder does not have standing to do so, unless it is also a citizen or taxpayer of the locality. *See Natare*, 824 N.E.2d at 338–39. Trans–Care is not a citizen or taxpayer of Vermillion County, but apparently of Vigo County.

*Id.* at 1258 (footnote omitted). Further, we held that, because the contract was for personal services, it was not governed by the strict bidding procedures outlined by the Public Purchasing laws. *Id.* at 1259. Consequently, Trans–Care had "even less of an argument regarding standing than the losing bidders in *Natare*, *All–Star*, and *Shook*, because its was a bid for personal services and thus it 'had no legal right to have its bid ... even considered' by the County," and it "lacked standing under the Public Lawsuit Statute to bring this action." *Id.* at 1258–1259. Lastly, we noted that:

> The *Shook* court emphasized that losing bidders for a governmental contract generally have no more standing to challenge the validity of the contract eventually awarded than a random member of the public. Losing bidders for a privately-awarded contract, as a stranger to the contract eventually awarded, in most cases clearly lack standing to challenge the contract, and the same rule applies to governmental contracts, with at least one notable exception. *See Shook*, 632 N.E.2d at 360 n. 7. The exception, with respect to either public or private contracts, is if the losing bidder can establish fraud, collusion, "or other illegal procedures" in the award of the contract. *Id.*

> The "illegal procedures" language is from *Gariup v. Stern*, 254 Ind. 563, 566, 261 N.E.2d 578, 581 (1970). The *Shook* court

Pierce argues that the language in *Natare* holding that an unsuccessful bidder cannot challenge the award of a contract under the Public Purchasing Statute should not be followed because it is *dicta*. Pierce points out that the bidder's claim was brought under the Indiana Antitrust Act and that the Public Purchasing Statute was not at issue in the case. Additionally, the project in *Natare* appears to be a public works project to which the Public Purchasing Statute would not apply. *See* I.C. § 5–22–1–1 to –3. Pierce also argues that Ind.Code § 5–22–19–2, which allows judicial review for persons aggrieved by a determination, was enacted in 1997, after the Indiana Supreme Court's opinions in *Shook* and *All–Star*. Pierce argues *Shook* and *All–Star* are not relevant here because the Public Purchasing Statute included for the first time the "person aggrieved" language.

For guidance in determining the intent of the legislature, it is appropriate for the court to examine the history surrounding the statute in question. *State v. Hensley*, 716 N.E.2d 71, 77 (Ind.Ct.App.1999), *trans. denied*. Prior to 1997, state procurement was governed by Ind.Code §§ 4–13.4 [8], and local government purchasing was governed by Ind.Code §§ 36–1–9.[9] In 1997, the two statutes were consolidated into one statute governing all public purchasing.

a. *Prior State Procurement Statutes.*

Prior to 1997, Ind.Code § 4–13.4–8–1 provided:

(a) The determinations required by:

IC 4–13.4–5–4;

IC 4–13.4–5–5;

IC 4–13.4–5–6;

IC 4–13.4–5–7;

IC 4–13.4–5–9;

IC 4–13.4–6–1;

IC 4–13.4–6–3(c); and

IC 4–13.4–7–4;

are final and conclusive, subject to judicial review under subsection (b).

(b) A person aggrieved by a determination described in subsection (a) may file a petition for judicial review of that determination in a court of appropriate jurisdiction. The court shall grant relief under this section only if it determines that a person seeking judicial relief has been substantially prejudiced by a determination by the department that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

(c) The burden of demonstrating the invalidity of the department's determination is on the person asserting the invalidity.

made clear that the "illegality" referred to in *Gariup* is a violation of the Indiana Antitrust Act. *Id.* at 1260. However, Trans–Care failed to allege a violation of the Indiana Antitrust Act. *Id.* at 1261. We concluded that the trial court properly granted summary judgment to the County on Trans–Care's claim. *Id.* at 1262.

**8.** Repealed by Pub.L. No. 49–1997, § 86 (eff. July 1, 1998).

**9.** Repealed by Pub.L. No. 49–1997, § 86 (eff. July 1, 1998).

(d) If the court finds that a person has been substantially prejudiced by a determination of the department, the court may set aside the determination. The court may remand the case to the department for further proceedings and compel an action by the department that has been unreasonably delayed or unlawfully withheld.

The "person aggrieved" language was added to the statute in 1987. Prior to that, the statute read: "The determination required by ... [various sections of I.C. 4–13.4] are final and conclusive, subject to judicial review under IC 4–22–1 [the Indiana Administrative Orders and Procedures Act]." I.C. § 4–13.4–8–1. At that time, Ind.Code § 4–22–1–14 [10] of the Administrative Orders and Procedures Act provided that "[a]ny party or person aggrieved by an order or determination made by any such agency shall be entitled to judicial review in accordance with the provisions of this act." Ind.Code § 4–13.4–8–1 was enacted in 1981. Thus, the "person aggrieved" language has been a part of the State purchasing statutes since 1981. Despite the long history of the statute, there are no Indiana cases that address the "person aggrieved" language in the context of Ind.Code § 4–13.4–8–1.

b. *Prior Local Purchasing Statutes.*

Prior to 1997, Ind.Code §§ 36–1–9 governed local government purchasing. Ind.Code § 36–1–9–17 was added in 1995 and provided: "A bidder or an offeror does not gain a property interest in the award of a contract by a political subdivision unless: (1) the bidder or offeror is awarded the contract; and (2) the contract is completely executed." Ind.Code §§ 36–1–9 contained no mention of a "person aggrieved"

and contained no provision for judicial review of purchasing determinations. However, the Indiana Supreme Court held that the legislature had provided a statutory right to enforce Ind.Code §§ 36–1–9 under two circumstances: (1) Ind.Code §§ 34–4–17,[11] the Public Lawsuit Statute, which "permits citizens or taxpayers of the municipality in question to bring an action questioning the validity or construction of any public improvement by the municipality;" and (2) Ind.Code § 24–1–2–7, the Indiana Antitrust Act, which "confers on private individuals the right to challenge the award of a government contract where the governmental entity and successful bidder have engaged in collusion or fraud." *Shook,* 632 N.E.2d at 357–358. Numerous cases held that an unsuccessful bidder could not challenge an award of a contract pursuant to Ind.Code §§ 36–1–9 except under these two circumstances. *See, e.g., id.; All–Star,* 640 N.E.2d at 370; *Cristiani v. Clark County,* 675 N.E.2d 715, 719 (Ind. Ct.App.1996) (holding that the unsuccessful bidder had standing under the Public Lawsuit Statute because he was both a citizen and taxpayer of Clark County), *reh'g denied, trans. denied.*

The Indiana Antitrust Act, Ind.Code §§ 24–1–2, has not been amended since *Shook.* The Public Lawsuit Statute, Ind. Code §§ 34–4–17, was repealed in 1998 but was reenacted as Ind.Code §§ 34–13–5 with only technical changes. Consequently, a citizen or taxpayer may still challenge a public improvement under the Public Lawsuit Statute, and an unsuccessful bidder may still challenge the award of a government contract in cases of collusion or fraud under the Indiana Antitrust Act. However, Pierce did not bring its lawsuit

---

**10.** Repealed by Pub.L. No. 18–1986, § 2 (eff. July 1, 1987); *see now* Ind.Code § 4–21.5–5–3.

**11.** Repealed by Pub.L. No. 1–1998, § 221 (eff. July 1, 1998); *see now* Ind.Code §§ 34–13–5.

against the City under either of these provisions.

■ With this history in mind, we return to the current statutory language of the Public Purchasing Statute, which allows judicial review of a determination by a "person aggrieved." Although the Public Purchasing Statute does not define the phrase, Indiana cases have defined a "person aggrieved" in other contexts. In *Huffman*, 811 N.E.2d at 810, the Indiana Supreme Court held:

> The statute does not define "aggrieved or adversely affected," but those words have a well-developed meaning. Black's Law Dictionary 73, 1154 (8th ed.2004), defines "aggrieved" as "having legal rights that are adversely affected," and "aggrieved party" as "a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." In another context, we have defined "aggrieved" as:

> [A] substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation.... The appellant must have a legal interest which will be enlarged or diminished by the result of the appeal.

*McFarland v. Pierce*, 151 Ind. 546, 547–48, 45 N.E. 706, 706–07 (1897) (construing statute allowing appeal to the Indiana Supreme Court), quoted in *Stout v. Mercer*, 160 Ind.App. 454, 460, 312 N.E.2d 515, 518 (1974) (citations and quotations omitted); *accord Bagnall v. Town of Beverly Shores*, 726 N.E.2d 782, 786 (Ind.2000). Essentially, to be "aggrieved or adversely affected," a person must have suffered or be likely to suffer in the immediate future harm to a legal interest, be it a pecuniary, property, or personal interest.

Thus, to be a "person aggrieved," Pierce must have suffered or be likely to suffer in the immediate future harm to a pecuniary, property, or personal interest. Pierce must have a legal interest that will be enlarged or diminished by the result of the judicial review.

■ It is clear that Pierce does not have a property interest here based upon Ind.Code § 5–22–3–6,[12] which is part of the

---

12. In 1994, the Indiana Supreme Court concluded that an unsuccessful bidder did not have a "protected property interest in the City following the procedures of [Ind.Code §§ 36–1–9 (Local Government Purchasing Statute in effect at that time)]." *Shook*, 632 N.E.2d at 361–362. In *Shook*, the Court adopted Judge Robertson's reasoning in *Rice v. Scott County*, 526 N.E.2d 1193 (Ind.Ct.App.1988):

> We start from the premise that there can be no protected property interest in adherence to established procedure.... [P]rocedural rules which impose limitations on the exercise of discretion by decision-makers are not themselves "property" interests, *see, e.g., Brock v. Roadway Express, Inc.*, 481 U.S. 252 [107 S.Ct. 1740, 95 L.Ed.2d 239] (1987), and the mere failure to follow applicable rules or procedures does not, without more, amount to a due process violation.

> However, a protected interest may be found in the benefit whose enjoyment is sought to be regulated by the procedure. The Fourteenth Amendment safeguards "the security of interests that a person has already acquired in certain benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972). To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it, derived from statute, legal rule or mutually explicit understanding and stemming from a source independent of the Constitution such as state law. *Id.* at 578 [92 S.Ct. at 2709–10]. *Perry v. Sindermann*, 408 U.S. 593, 602 [92 S.Ct. 2694, 2700, 33 L.Ed.2d 570] (1972). A mere unilateral expectation or an abstract need is not a property interest entitled to protection. *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155, 162 [101 S.Ct. 446, 451, 66 L.Ed.2d 358] (1980).

> No Indiana state court, to our knowledge, has recognized the existence of a constitutionally protected property interest in a govern-

general provisions of the Public Purchasing Statute, and provides:

> An offeror does not gain a property interest in the award of a contract by a governmental body unless:
>
> (1) the offeror is awarded the contract; and
>
> (2) the contract is completely executed.

Thus, the question is whether Pierce has a pecuniary or personal interest harmed by a determination of the City.

Neither party specifically addresses this issue, and our research reveals no Indiana cases directly on point. However, other jurisdictions have considered whether an unsuccessful bidder has a pecuniary interest in an award of a contract. For example, in In re *Estate of Harmston*, 10 Ill. App.3d 882, 295 N.E.2d 66 (1973), the court noted that "a person is prejudiced or aggrieved in the legal sense when a legal right is invaded by an act or order complained of or his pecuniary interest is directly affected by the order in question. 'Aggrieved' means having a substantial grievance; a denial of some personal or property right." *Harmston*, 295 N.E.2d at 68. The court held that an unsuccessful bidder at a judicial sale had no vested rights in the property and did not have sufficient interest to allow it to appeal the sale. *Id.* In *State v. County of Callaway*, 962 S.W.2d 438, 441 (Mo.Ct.App.1998), the court held that an unsuccessful bidder did not have a "private, pecuniary interest[ ]"

that the law would recognize and enforce and was "not deprived of anything to which they were legally entitled...." Similarly, in *In re Colony Hill Assoc.*, 111 F.3d 269, 273 (2nd Cir.1997), the court held that, except in cases of collusion, an unsuccessful bidder was not a person "aggrieved" because an unsuccessful bidder's only pecuniary loss was "the speculative profit it might have made had it succeeded in purchasing property at an auction." Although some courts have held that an unsuccessful bidder is a person aggrieved, *see, e.g.*, *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970), *reh'g denied*, we find the above cases more persuasive and in line with Indiana Supreme Court precedent.

Ind.Code § 5–22–3–6 clearly provides that Pierce does not have a property interest in the award of the contract. Furthermore, we fail to see how Pierce had a personal interest in the City's determination and any pecuniary interest was speculative and insufficient to establish that it was a "person aggrieved" under the Public Purchasing Statute. Pierce argues that this interpretation renders the judicial review provisions of the Public Purchasing Statute ineffective because "if a responsive, yet rejected, bidder were not aggrieved by a violation of the Public Purchasing Statute, it is difficult to imagine who would be." Appellee's Brief at 12. We agree that, in interpreting a statute, we cannot presume "the Legislature in-

---

ment contract sought by a disappointed bidder. However, a number of federal courts have considered the issue.

> Were we to apply any of the tests expounded by the federal courts, we would still be bound to conclude that the facts offered [by plaintiff] establish nothing more than a unilateral expectation or abstract desire on [plaintiff's] part.

*Shook*, 632 N.E.2d at 361 (brackets in original) (quoting *Rice*, 526 N.E.2d at 1196–97 (footnotes and some citations omitted)). In

1995, following *Shook*, the legislature added Ind.Code § 36–1–9–17, which was part of the local government purchasing statutes and provided: "A bidder or an offeror does not gain a property interest in the award of a contract by a political subdivision unless: (1) the bidder or offeror is awarded the contract; and (2) the contract is completely executed." This same language was included in the Public Purchasing Statute when it was enacted in 1997.

tended to do an absurd thing or to enact a statute that has useless provisions, the effect of which can easily be avoided." *State ex rel. Hatcher v. Lake Superior Court, Room Three,* 500 N.E.2d 737, 739 (Ind. 1986). However, our interpretation of the judicial review provisions of the Public Purchasing Statute does not render the provisions useless. Ind.Code § 5–22–19–1 only allows for judicial review of "determinations," and numerous "determinations" are discussed in the Public Purchasing Statute. Many of the "determinations" do not involve the challenge of a contract award by an unsuccessful bidder. *See, e.g.,* Ind.Code § 5–22–17–5 (involving a determination to cancel a contract where funds are not appropriated or available); Ind.Code § 5–22–5–5 (involving a determination that the development of specifications by the governmental body is not feasible). Further, the Indiana Supreme Court has noted that "[i]t is just as important to recognize what the statute does not say as it is to recognize what it does say." *State v. Dugan,* 793 N.E.2d 1034, 1036 (Ind.2003). Given the legislative and judicial history in Indiana regarding unsuccessful bidders challenging the award of a governmental contract, if the legislature had intended to allow unsuccessful bidders to make challenges to a contract award under the Public Purchasing Statute, such an intent could have been made clear.

We conclude that the trial court erred by denying the City's motion to dismiss because, as an unsuccessful bidder, Pierce was not a "person aggrieved" and did not have standing to appeal the City's award of the contract under the Public Purchasing Statute. *See, e.g., Lake County Plan Comm'n v. Lake County Council,* 706 N.E.2d 601, 603 (Ind.Ct.App.1999) (holding that the county plan commission failed to demonstrate that it was an aggrieved party where it did not have a personal or legal interest in insuring that the county council

followed the zoning statutes), *trans. denied.* Because we conclude that Pierce does not have standing to contest the City's award of the contract to ALF, we need not address the remaining issues raised by the City concerning whether it complied with the Public Purchasing Statute in awarding the contract.

For the foregoing reasons, we reverse the trial court's denial of the City's motion to dismiss.

Reversed.

NAJAM, J., and ROBB, J., concur.