**SHOOK HEAVY AND ENVIRONMENTAL CONSTRUCTION GROUP, A DIVISION OF SHOOK, INC., Plaintiff,**

v.

**CITY OF KOKOMO, Defendant.**

**No. 49S00–9401–CQ–59.**

Supreme Court of Indiana.

April 5, 1994.

Michael W. Currie, Arter & Hadden, Columbus, OH, Robert Zeigler, Lacava, Zeigler & Carter, Indianapolis, for plaintiff.

Thomas J. Trauring, Fell, McGarvey, Trauring & Wilson, Kokomo, for defendant.

SULLIVAN, Justice.

 In response to a certified question from the United States District Court of the Southern District of Indiana,[1] we hold that

---

1. Pursuant to Ind.Appellate Rule 15(O), the following question was certified to us by the Honorable John D. Tinder:

    "Plaintiff, an Ohio contractor which neither pays Indiana state taxes nor City of Kokomo taxes, bid on a public contract pursuant to an invitation to bid issued by the City of Kokomo.

After the close of the bid period, the City of Kokomo announced its intent to award the contract to a bidder other than the plaintiff. Plaintiff contends that the selected bidder's bid deviated from the requirements of the City of Kokomo's Invitation to Bid and Bid Specifications. Does plaintiff, the losing bidder, have a cause of

an unsuccessful bidder does not have a cause of action under Indiana law for an injunction prohibiting a city from awarding a public contract to the selected bidder if the unsuccessful bidder's legal theory is that the selected bidder is not the lowest responsible and responsive bidder as required under Ind. Code Ann. § 36–1–9–3 (Burns 1993).

This question arises out of plans by the City of Kokomo to construct a municipal sludge composting facility. Under Ind.Code § 36–1–9 (the "Public Purchasing Statute"),[2] the City was required to solicit sealed bids according to a strict statutory regime and award the contract to the lowest responsible and responsive bidder. Shook Heavy & Environmental Construction Group ("Shook") submitted a bid pursuant to the City's solicitation. When the bids were opened, the City announced that another bidder was the lowest responsible and responsive bidder and that it intended to award the contract to that bidder. Shook filed suit in United States District Court for the Southern District of Indiana, seeking to enjoin the award of the contract on the basis that deficiencies in the bid of the apparent low bidder caused that bidder's bid to be not the lowest responsible and responsive bid. The district court preliminarily enjoined the award of the contract and has asked this court whether Shook has a cause of action for an injunction as a matter of Indiana law. We conclude that no cause of action for an injunction on these grounds is available to an unsuccessful bid-

der under the statutory, common, or constitutional law of Indiana.

*Statutory Law*

◼ As a preliminary matter, we note that the competitive bidding requirements followed by the City in this case were created by the legislature in the Public Purchasing Statute. Not all public purchases require competitive procurement procedures. In general, only supplies, goods, machinery, packaged software, and equipment must be acquired through competitive bids. Ind. Code Ann. §§ 36–1–2–9.5 and 36–1–9–1 (Burns 1993). On the other hand, procurements of personal services such as architectural and engineering, legal, and investment banking services are not included within the scope of the Public Purchasing Statute and, therefore, not subject to it. Because Shook would have had no legal right to have its bid for the Kokomo project even considered by the City absent the legislature's enactment, it is appropriate that we begin by reviewing whether the legislature has also enacted provisions concerning the enforcement of the Public Purchasing Statute.

The legislature has provided a statutory right to enforce the Public Purchasing Statute under two circumstances.

◼ First, Ind.Code Ann. § 34–4–17 (Burns 1986 & Supp.1993) (the "Public Lawsuit Statute")[3] permits citizens or taxpayers

action under Indiana law for an injunction prohibiting the City of Kokomo from awarding the public contract to the selected bidder if plaintiff's legal theory is that the selected bidder is not the lowest responsible and responsive bidder as required under IND.CODE § 36–1–9–3?"

Because the question notes that the plaintiff is "an Ohio contractor" and because defense counsel makes much of plaintiff being "an out-out-state disappointed bidder," we note at the outset that our resolution of this question does not turn in any way on the plaintiff being from outside Indiana. The result would be the same if the plaintiff were an Indiana contractor.

2. The Public Purchasing Statute, as we have named it here, is one of several Indiana competitive bidding statutes which impose competitive bidding requirements upon governmental procurements. *See, e.g.,* Ind.Code Ann. § 4–13.4–2 (Burns 1990 & Supp.1993) (state government procurement); Ind.Code Ann. § 20–12–3–2 (Burns, 1991) (state university procurement).

The Public Purchasing Statute now covers procurement by counties, cities, towns, townships, school corporations, other municipal corporations, special taxing districts, and agencies of each of those entities. Ind.Code Ann. §§ 36–1–2–10; 36–1–2–13; and 36–1–9–1 (Burns 1993). Prior to 1993, separate competitive bidding statutes existed for a number of different units of government.

3. Relevant sections of the Public Lawsuit Statute include:

Ind.Code Ann. § 34–4–17–1(b) (Burns 1986). "Public lawsuit" shall mean any action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leas-

of the municipality in question to bring an action questioning the validity or construction of any public improvement by the municipality. The "public lawsuit" provisions are grounded in the historical principle that competitive bidding statutes are "enacted for the benefit of property holders and taxpayers and not for the benefit or enrichment of bidders." 10 EUGENE McQUILLIN, LAW OF MUNICIPAL CORPORATIONS § 29.29 (1990). This principle has been acknowledged on a number of occasions by this court, *e.g., State ex rel. Sekerez v. Lake Superior Court* (1975), 263 Ind. 601, 602, 335 N.E.2d 199, 200, and the Court of Appeals, *e.g., Irwin R. Evens & Son v. Airport Authority* (1992), Ind.App., 584 N.E.2d 576, 582; *Rice v. Scott County School District* (1988), Ind. App., 526 N.E.2d 1193, 1197.[4]

Second, Ind.Code Ann. § 24–1–2–7 (Burns 1991)[5] confers on private individuals the right to challenge the award of a government contract where the governmental entity and successful bidder have engaged in collusion or fraud. *City of Auburn v. Mavis* (1984), Ind.App., 468 N.E.2d 584, 585. This statute addresses the concern this court expressed in *Gariup v. Stern* (1970), 254 Ind. 563, 566, 261 N.E.2d 578, 581, when we observed that a "bidder invests considerable time, effort and money in submitting a bid and is pecuniarily damaged if illegal procedures are used to his disadvantage."

An unsuccessful bidder could challenge the award of a contract under either of these two statutes but only if, in the first case, the unsuccessful bidder was a citizen or taxpayer of the municipality or, in the second case, the unsuccessful bidder alleged collusion or fraud. Neither of these circumstances are applicable to Shook. Shook is not a citizen or taxpayer of Kokomo[6] and does not allege collusion or fraud.

ing.... This definition, as used in this chapter [Ind.Code Ann. § 34–4–17 (Burns 1986 & Supp. 1993)], shall not be construed to broaden any right of action as is now validly limited by applicable law.

Ind.Code Ann. § 34–4–17–2 (Burns 1986). All public lawsuits shall be brought solely in conformity with and governed by the provisions of this chapter [Ind.Code Ann. § 34–4–17 (Burns 1986 & Supp.1993)].

Ind.Code Ann. § 34–4–17–3 (Burns 1986). Plaintiffs in a public lawsuit may sue in their capacity either as citizens or taxpayers of the municipal corporation, but such suit shall be a class suit (whether captioned or not), subject to the rights of intervention, the addition of parties and the addition of other representatives of the same class, as is now provided by law in other civil actions.

**4.** This principle was apparently first acknowledged in our state in *Lane v. Boone County Commissioners* (1893), 7 Ind.App. 625, 626–7, 35 N.E. 28, 29, where an unsuccessful bidder on a road construction contract sued for damages on grounds that the county was liable to the plaintiff for failure in the performance of official duties on the basis that the plaintiff was the lowest and best bidder. The plaintiff also alleged favoritism, fraud, and collusion in the award of the contract. The Court of Appeals held that "the officers whose duty it was to let the contract might have been enjoined from awarding it to the other bidders, or they might have been compelled, by mandate in the proper court, to award the contract to the appellant. Such a proceeding, however, could have been instituted only by some property-owner effected by the assessments. The statute cited was not enacted for the benefit of bidders, but for the protection of the property-

owners effected by the improvement, and, possibly, also, for the benefit of the general public." *Id.*

**5.** Ind.Code Ann. § 24–1–2–7 (Burns 1991) provides in relevant part:

"Any person who shall be injured in his business or property by any person or corporation by reason of the doing by any person or persons of anything forbidden or declared unlawful by this chapter [Ind.Code Ann. § 24–1–2 (Burns 1991 & Supp.1993)] may sue therefor in the circuit or superior court of any county in which the defendant or defendants, or any of them reside or are found without respect to the amount in controversy, and shall recover a penalty of threefold the damages which may be sustained, together with the costs of suit, including reasonable attorneys' fees."

Ind.Code Ann. § 24–1–2–3 (Burns 1991) provides that "[a] person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or *public* work, or restricts free competition for the letting of any contract for private or *public* work, commits a Class A misdemeanor" (emphasis supplied).

**6.** At oral argument, plaintiff contended that not to permit it to maintain its action for injunctive relief when it clearly could have arranged for a "friendly" Kokomo taxpayer to bring suit under the Public Lawsuit Statute was a triumph of form over substance. We decline to accept this argument. While it is true that Shook could have challenged the award of the contract indirectly through the use of a Kokomo taxpayer, that taxpayer would have had to proceed under the

Furthermore, the legislature has specifically provided by statute for the appeal of certain municipal decisions. *See, e.g.,* Ind.Code Ann. § 36–1–10–15 (Burns 1993) (authorizing appeals of decisions by political subdivisions to lease or lease purchase structures, transportation projects, and systems); Ind.Code Ann. § 36–7–14–1332, –1333, and –1336 (Burns 1989) (authorizing appeals of assessments of impact fees); Ind.Code Ann. § 36–9–38–27 (Burns Supp.1993) (authorizing appeals of Barrett Law assessments). Ind. Code Ann. § 34–4–17.5 (Burns 1986 & Supp. 1993) sets forth specific procedures governing actions pursuant to explicit appeal procedure statutes.

From the foregoing, we conclude that the legislature has not provided any statutory basis upon which an unsuccessful bidder that is not a citizen or taxpayer of the municipality in question and where collusion or fraud in the award of the contract is not alleged can bring an action seeking to enjoin the award of the contract. Furthermore, we believe that there is a strong inference that the legislature specifically intends that there be no cause of action, such inference being drawn from the fact that the legislature has provided a specific appeal procedure for certain municipal decisions but not for decisions awarding contracts under the Public Purchasing Statute.

### Common Law

Shook does not contend that it has a statutory right to a cause of action for an injunction prohibiting the City from awarding the contract. Rather, Shook seeks recognition of such a right under common law.

Shook argues that if only taxpayers are entitled to enforce the provisions of the competitive bidding statutes, it is likely that only a public decision that increases the price of a contract to the political subdivision will be challenged. For example, in plaintiff's view only an unsuccessful bidder, and not a taxpayer, is likely to challenge a decision in which inferior materials are substituted for

those specified in the original bid solicitation but where the bid price remains the same. The public interest, Shook argues, dictates that an unsuccessful bidder be permitted to intervene in such circumstances.

Plaintiff also argues that a secondary purpose of statutes like the Public Purchasing Statute is to protect the sanctity of the competitive bidding process. Confidence that a level playing field is available for all contractors is essential, Shook argues, to maintain an active and competitive bidding environment for municipal construction. Allowing unsuccessful bidders to seek injunctive relief when statutory procedures are not adhered to clearly would further this goal.

However, there are important public policy arguments in favor of denying unsuccessful bidders the ability to seek injunctive relief. First, there is a clear public interest in expeditious construction of public works projects. Nowhere is time money more than in the construction field. And prompt completion of public construction projects is often important from a public safety standpoint. Second, the cost of litigating contracts awarded under competitive bidding statutes—perhaps multiple lawsuits in respect of a single contract award if more than one unsuccessful bidder seeks relief—could pose a serious threat to public treasuries.

Both sets of arguments are strong. In the end, the choice as to which is the appropriate policy is within the purview of the legislature, not this court, absent constitutional difficulties.

Both parties cite this court's decision in *Gariup v. Stern*, 254 Ind. 563, 261 N.E.2d 578, in support of their position. In *Gariup*, this court considered a lawsuit, brought by an unsuccessful bidder and a group of concerned taxpayers, to enjoin the award of a public contract for construction of a new school building. In analyzing the complaint, this court recognized that the unsuccessful bidder did not have a cause of action under the public lawsuit statute. Rather, this court held such an action is a "private lawsuit."

requirements of the Public Lawsuit Statute. That statute imposes a number of strict procedural requirements on plaintiffs that are designed to balance the interests of taxpayer scrutiny and expeditious pursuit of public works projects. *See State ex rel. Sekerez v. Lake Superior Court* (1975), 263 Ind. 601, 602, 335 N.E.2d 199, 200.

254 Ind. at 566, 261 N.E.2d at 582. Shook contends that this conclusion creates a common law cause of action for an unsuccessful bidder, separate and independent from that permitted under the public lawsuit statute.

We do not believe that *Gariup* need be read that way. In fact, this court in *Gariup* dismissed the entire cause of action for failure to comply with the technical requirements of the Public Lawsuit Statute. We believe that *Gariup* is properly understood to mean simply that an unsuccessful bidder has no cause of action under the Public Lawsuit Statute unless that bidder is a citizen or taxpayer of the municipality. While concluding that the unsuccessful bidder's lawsuit would be a private, not a public lawsuit, *Gariup* does not hold that the unsuccessful bidder would have standing to maintain the private lawsuit.[7]

We do note that courts have broad discretion in equity to grant injunctive relief. We are unable to say that this court would never approve a court, acting solely in its equitable discretion, granting an injunction at the request of an unsuccessful bidder under a competitive bidding statute. But we find no basis in either Indiana statutory or common law for such a cause of action.

### Constitutional Law

At oral argument, Shook raised for the first time a claim that its cause of action should be recognized under article I, section 12, of the Indiana Constitution. That glorious provision provides in relevant part:

> All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.

Because this issue was not briefed,[8] we decline to give it extensive treatment but do make the following observations. In many respects, the argument Shook advances here is analogous to a claim sometimes asserted by disappointed bidders against municipalities pursuant to 42 U.S.C. § 1983.[9] In such cases, the unsuccessful bidder claims that alleged violations of bidding procedures vio-

---

7. As discussed *supra* in connection with the enforcement of the collusion and fraud statute, *Gariup* makes clear that a bidder spends considerable money, time, and effort in preparing a bid under competitive bidding statutes and is "pecuniarily damaged if illegal procedures are used to his disadvantage." 254 Ind. at 566, 261 N.E.2d at 581. While it might be argued that this court's recognition of such damages implies the existence of a common law tort, we believe the damage of which *Gariup* speaks is a result of the governmental entity employing "fraud or other illegal procedures," *id.*, in awarding the contract. The unsuccessful bidder does have a cause of action in such circumstances under Ind.Code Ann. § 24–1–2–7 (Burns 1991). In the absence of a violation of Ind.Code Ann. § 24–1–2–3 (Burns 1991), the bidder has nothing more than "a unilateral expectation or abstract desire." *See Rice v. Scott County*, 526 N.E.2d at 1197. This conclusion is buttressed by considering its application in the case of a non-governmental entity seeking competitive bids on a project. Clearly an unsuccessful bidder has no common law cause of action against the party soliciting bids if another bidder is chosen. However, an unsuccessful bidder on a *private* project does have a cause of action under Ind.Code Ann. § 24–1–2–7 (Burns 1991) if fraud or collusion is alleged. In the absence of legislative direction, we see no reason why the common law rules in this regard should not be the same for bids on public and private projects.

8. Indeed, the argument cannot be squared with two other contentions of the plaintiff. First, plaintiff acknowledges that it would have no remedy if the competitive bidding procedure involved a non-government contract. But article I, section 12, is not limited to causes of action against governmental entities. Similarly, plaintiff maintains that it has no cause of action for damages, only for injunctive relief. However, if it has a constitutional right to maintain this action, it is hard to understand how the constitution limits the action to injunctive relief only.

9. Section 1983 of 42 U.S.C. provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

For a collection of cases dealing with the issue of whether a disappointed bidder is entitled to maintain a claim against a governmental entity under 42 U.S.C. § 1983, *see* Kathleen M. Dorr, Annotation, *Standing of Disappointed Bidder on Public Contract to Seek Damages under 42 USCS § 1983 for Public Authorities' Alleged Violation of Bidding Procedures*, 86 A.L.R.FED. 904 (1988).

lated its federal constitutional due process rights under the Fifth and Fourteenth Amendments. U.S. CONST. amends. V and XIV. Here Shook claims that alleged violations of the Public Purchasing Statute violated its state constitutional due process rights under article I, section 12. IND. CONST. art. I, § 12.

Our Court of Appeals dealt with such a claim in *Rice v. Scott County,* where Judge Robertson correctly analyzed the issues involved:

We start from the premise that there can be no protected property interest in adherence to established procedure.... [P]rocedural rules which impose limitations on the exercise of discretion by decision-makers are not themselves "property" interests, *see, e.g., Brock v. Roadway Express, Inc.,* 481 U.S. 252 [107 S.Ct. 1740, 95 L.Ed.2d 239] (1987), and the mere failure to follow applicable rules or procedures does not, without more, amount to a due process violation.

However, a protected interest may be found in the benefit whose enjoyment is sought to be regulated by the procedure. The Fourteenth Amendment safeguards "the security of interests that a person has already acquired in certain benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972). To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it, derived from statute, legal rule or mutually explicit understanding and stemming from a source independent of the Constitution such as state law. *Id.* at 578 [92 S.Ct. at 2709–10]. *Perry v. Sindermann,* 408 U.S. 593, 602 [92 S.Ct. 2694, 2700, 33 L.Ed.2d 570] (1972). A mere unilateral expectation or an abstract need is not a property interest entitled to protection. *Webb's Fabulous Pharmacies v. Bechwith,* 449 U.S. 155, 162 [101 S.Ct. 446, 451, 66 L.Ed.2d 358] (1980).

No Indiana state court, to our knowledge, has recognized the existence of a constitutionally protected property interest in a government contract sought by a dis-

appointed bidder. However, a number of federal courts have considered the issue.

Were we to apply any of the tests expounded by the federal courts, we would still be bound to conclude that the facts offered [by plaintiff] establish nothing more than a unilateral expectation or abstract desire on [plaintiff's] part.

*Rice,* 526 N.E.2d at 1196–97 (footnotes and some citations omitted).

Our court has regularly applied the principles cited by Judge Robertson in federal constitutional "due process" claims asserted in our court, *see, e.g., Stewart v. Fort Wayne Community Schools* (1990), Ind., 564 N.E.2d 274, 280 *cert. denied* —— U.S. ——, 112 S.Ct. 169, 116 L.Ed.2d 133 (1991); *Kellogg v. City of Gary* (1990), Ind., 562 N.E.2d 685, 693; *Marion. Co. Sheriff's Merit Bd. v. Peoples Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235, 239; *Speckman v. City of Indianapolis* (1989), Ind., 540 N.E.2d 1189, 1193; *Wilson v. Board of Ind. Emp. Sec. Div.* (1979), 270 Ind. 302, 308, 385 N.E.2d 438, 443, *cert. denied* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979), and at least one generic federal and state constitutional "due process" claim as well, *City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 676, 310 N.E.2d 65, 68.

██ Because these are familiar principles in Indiana jurisprudence, we have no difficulty in explicitly extending them to article I, section 12, of our constitution. For a person to have a constitutional right under article I, section 12, to maintain a cause of action for injury done to the person in the person's property, the plaintiff must have allegedly suffered some injury to a protected property interest. Further, while there can be no protected property interest in adherence to established procedure, a protected interest may be found in the benefit whose enjoyment is sought to be regulated by the procedure. To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it, derived from statute, legal rule or mutually explicit understanding.

██ Applying these principles to the case before us, we hold that Shook has no protected property interest in the City following the

procedures of the Public Purchasing Statute. As to the "benefit" Shook seeks (which we can consider to be either the award of the contract to Shook or the deprivation of the award of the contract to the successful bidder), we hold that Shook has no entitlement to that benefit derived from statute (*see* discussion of "Statutory Law," *supra*), from legal rule (*see* discussion of "Common Law," *supra*), or from mutually explicit understanding.

Some discussion of mutually explicit understanding is warranted. The "understanding" involved here is not an understanding that the City would follow the provisions of the Public Purchasing Statute; that issue has already been disposed of in the holding that an unsuccessful bidder has no protected property interest in following procedures. Rather, the understanding would have to be that the bidder would be awarded the contract. Such an understanding is not contended and would likely violate Ind.Code Ann. § 24–1–2–3 (Burns 1991), *supra*, note 5.

Because Shook does not have a property interest in the award of the contract it seeks from the City, we hold that article I, section 12, of our constitution does not provide plaintiff with a cause of action to seek to enjoin the award of the contract to another bidder.

### *Conclusion*

Having reviewed the statutory, common, and constitutional law of the State of Indiana, we find that an unsuccessful bidder who cannot or does not proceed pursuant to Ind.Code Ann. § 34–4–17 (Burns 1986) or Ind.Code Ann. § 24–1–2–7 (Burns 1991) does not have a cause of action under Indiana law for an injunction prohibiting a city from awarding a public contract to another bidder if the unsuccessful bidder's legal theory is that the selected bidder is not the lowest responsible and responsive bidder as required under Ind. Code Ann. § 36–1–9–3 (Burns 1993).

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.