GARIUP CONSTRUCTION COMPANY, INC., Appellant–Plaintiff,

v.

CARRAS–SZANY–KUHN & ASSOCIATES, P.C., Thomas Kuhn, Dan Szany, Gil Behling & Son, Inc., and Larry Behling, Appellees–Defendants.

No. 45A04–1007–PL–429.

Court of Appeals of Indiana.

April 6, 2011.

David A. Buls, Anne A. Abrell, Casale, Woodward & Buls, LLP, Merrillville, IN, Attorneys for Appellant.

Stephen M. Maish, Maish & Mysliwy, Hammond, IN, Attorney for Appellees, Gil Behling & Son, Inc., and Larry Behling.

Richard A. Young, John B. Drummy, Erin A. Clancy, Kightlinger & Gray, LLP, Indianapolis, IN, Crystal G. Rowe, Kightlinger & Gray, LLP, New Albany, IN, Attorneys for Appellees, Carras–Szany–Kuhn & Associates, P.C., Thomas Kuhn, and Dan Szany.

## OPINION

VAIDIK, Judge.

### Case Summary

An unsuccessful bidder on a public construction project brought an action under the Indiana Antitrust Act against the architect and the successful bidder, two nongovernmental entities, alleging that they colluded to restrict bidding. The trial court granted summary judgment in favor of the architect and the successful bidder and denied the unsuccessful bidder's partial summary judgment motion. The unsuccessful bidder now contends that the trial court erred by doing so because: (1) its claim was properly brought under Indiana Code section 24–1–2–3 of the

Indiana Antitrust Act as a matter of law, even where it did not allege that the governmental entity was a party to the collusion and (2) genuine issues of material fact exist as to the collusion between the architect and the successful bidder. We conclude that the unsuccessful bidder's claim was properly brought under Section 24–1–2–3 of the Indiana Antitrust Act. We further conclude, however, that the designated evidence presents no genuine issue of material fact from which a factfinder could reasonably infer that the architect and successful bidder colluded to restrict bidding. Finally, we decline to conclude that the architect and successful bidder are entitled to appellate attorneys' fees. We affirm the trial court.

### Facts and Procedural History

In 2001, the Lake County Public Library ("Library") and Carras–Szany–Kuhn & Associates, P.C. ("CSK"), entered into a contract providing that CSK would serve as the architect in the construction and/or renovation of branch library facilities. The contract provided in relevant part that CSK "shall assist" the Library in the bidding process:

> 2.4.2 [CSK] shall assist the [Library] in the preparation of the necessary bidding information, bidding forms, the Conditions of the Contract, and the form of Agreement between the [Library] and Contractor.
>
> \* \* \* \* \* \*
>
> 2.5.1[CSK], following the [Library]'s approval of the Construction Documents and of the latest preliminary estimate of Construction Cost, shall assist the [Library] in obtaining bids or negotiated proposals and assist in awarding and preparing contracts for construction.

Appellees' App. p. 10. Thomas Kuhn, who owns one-third of CSK, signed the contract.

In August 2007, CSK completed a project manual for additions and renovations to the Library's branch facility in Munster. The project manual indicated that Kuhn was the project architect. Sections of the project manual included the Advertisement for Bids and the Instructions to Bidders.

The Advertisement for Bids, which was published twice in August 2007, instructed contractors interested in the Munster project to submit their sealed bids by 1:00 p.m. on September 20, 2007, at which time they would be opened and publicly read. It required each bid to be "properly executed on Indiana State Form 96 including the Non-collusion Affidavit and Contractor's Financial Statement," *id.* at 24, and directed each bidder to submit a satisfactory bid bond in the amount of five percent of the maximum bid, *id.* at 23. It also required each bidder to submit a complete list of subcontractors within twenty-four hours of the bid due date and time:

> *Bidders shall submit to the [Library] within 24 hours from the bid due date and time a complete list of all sub-contractors to be awarded contracts on this project. Bidder's bid may be rejected if the sub-contractors list is not submitted as requested in accordance with the Bid Documents.* The successful bidder's award of sub-contractors contracts shall not deviate from the sub-contractors list as submitted unless approved by the [Library]. The Bidder's subcontractor list is requested to be complete for all subcontracted work and shall list only one subcontractor for each.

*Id.* at 24 (emphasis added). The Instructions to Bidders provided in pertinent part that the bidders had to comply with the conditions set forth in the Advertisement for Bids:

> 1.10 AWARD OF CONTRACT–RE-JECTION OF BIDS

A. The Contract will be awarded to the lowest responsive and responsible bidders complying with the conditions of the advertisement for bids, provided the bidder's bid is reasonable and to the interest of the [Library] to accept it. . . .

*Id.* at 28.

The bid proposal form for the project included blanks for, among other things, the base bid, Alternate Bid # 1, Alternate Bid # 2, and the number of days to complete the project. Alternate Bid # 1 was the amount to be added to the base bid to start the project in spring 2008. Alternate Bid # 2 was the amount to be added to the base bid to provide additional light fixtures. The sealed bids were opened and publicly read on September 20, 2007. The only bids relevant to this appeal, those submitted by Gariup Construction Company, Inc., and Gil Behling & Son, Inc., were the lowest bids submitted.

Gariup's base bid was $717,400, Alternate Bid # 1 increased the base bid by $6000, Alternate Bid # 2 increased the base bid by $16,500, and it agreed to complete the work in 168 days.

Behling & Son's base bid was $730,000, and Alternate Bid # 2 increased the base bid by $10,500. Behling & Son did not include a price for Alternate Bid # 1 or the number of days to complete the project.

Shortly after the opening and reading of the bids, Kuhn reminded Gariup and Behling & Son that they had to submit their subcontractor lists within twenty-four hours of the bid due date and time, as required by the Advertisement for Bids. Behling & Son timely submitted its subcontractor list to CSK. Along with its list, Behling & Son indicated that Alternate Bid # 1 would increase the base bid by $6000 and that it would complete the work in 180 days. Gariup submitted its subcon-tractor list to CSK at 2:12 p.m. on September 21, one hour and twelve minutes late.

Kuhn gave Behling & Son's and Gariup's subcontractor lists to the Library. He told the Library's attorney, Tim Kelly, that Behling & Son's list was on time and Gariup's list was late but offered no opinion on which contractor should get the job.

The Library asked Attorney Kelly to review the bids and provide the Board of Trustees with a legal opinion. In a September 26 letter to the Library, Attorney Kelly noted that each bid must meet five requirements as prescribed by Indiana statute, the State Board of Accounts, and the Library's published notice to bidders. Each bidder must submit: (1) a bid on Indiana State Form 96; (2) a properly executed non-collusion affidavit; (3) a financial statement; (4) a bid bond for 5% of the maximum bid; and (5) a list of subcontractors within twenty-four hours of the bid due date and time. Attorney Kelly summarized:

These five items are all mandatory and must be part of every bid submitted. The Library Board of Directors cannot legally waive any of these requirements. Other requirements of bidding can be waived pursuant to the notice to bidder language which states; "The Lake County Public Library reserves the right to reject any and all bids, to waive any informalities in bidding or return unopened any proposal received after the time fixed herein."

*Id.* at 33. He observed that although both Gariup and Behling & Son complied with the first four requirements, only Behling & Son complied with the fifth requirement by timely submitting its subcontractor list:

Unfortunately, Gariup Construction failed to supply a list of subcontractors within 24 hours of the bid opening. Conversely, Gil Behling & Sons did comply with that requirement of the adver-

tisement. Please note that the language of the advertisement uses the word "shall". Legally, the word "shall" means that it is a mandatory requirement. Since Gariup Construction failed to meet this mandatory requirement, its bid, by definition, is not responsive.

*Id.* Attorney Kelly therefore concluded, "[I]n my opinion, the lowest and most responsive bid is the bid submitted by Gil Behling & Sons." *Id.*

Kuhn then sent a letter to the Library on September 27 with CSK's recommendation that the Library award the contract to Behling & Son: "We have reviewed the Bid Documents and based upon your attorney's recommendations we recommend awarding Base Bid #1 and Alternate Bid #2 for the [Munster project] to the apparent lowest most responsive and responsible bidder ... Gil Behling & Son, Inc." *Id.* at 34. The letter recommended rejecting Alternate Bid #1.

The Library held a public meeting that same day. Before the meeting, each Board member was provided with a copy of Attorney Kelly's letter. The Board voted unanimously to accept Behling & Son's bid.

In March 2008, Gariup filed a complaint for damages against CSK, Kuhn, Dan Szany, who owns the remaining two-thirds of CSK (collectively, "the CSK Appellees"), Behling & Son, and Larry Behling, the sole owner of Behling & Son (collectively, "the Behling Appellees"). Gariup alleged that the defendants restricted bidding for the Munster project in violation of the Indiana Antitrust Act:

10. The Defendants schemed and/or combined to restrict bidding in relation to the Project. In particular, the Defendants intentionally violated numerous requirements relating to public work bidding statutes and otherwise wrongly rejected Gariup's bid for the Project all in order to restrict bidding such that the second lowest bidder, Defendant, Gil Behling & Son, Inc. received the contract for the Project rather than Gariup, despite having submitted a higher bid.

Appellant's App. p. 16.

In November 2008, the CSK Appellees filed a summary judgment motion with designations. They argued that Gariup failed to set forth a viable state antitrust claim because they had no authority to award the contract. Gariup received multiple extensions of time to file its response. In July 2009, Gariup deposed Szany, a part owner of CSK, who testified that Behling was a close personal friend. Szany further testified that he and his wife and Behling and his wife had vacationed together in Alaska, California, and Hawaii, taken a weekend trip to Green Bay to see a Packers game, and attended Bears and White Sox games in Chicago. Gariup then filed its response with designations, and the CSK Appellees subsequently filed supplemental designations. After a hearing, the trial court granted the summary judgment motion in October 2009.

In September 2009, the Behling Appellees filed a summary judgment motion with designations. Like the CSK Appellees, they argued that they had no authority to award the contract. Gariup filed its response with designations, and the Behling Appellees replied. During this same time period, Gariup filed a partial summary judgment motion with designations. It claimed that: (1) requiring each bidder to submit a subcontractor list after the opening of bids was contrary to Indiana's public bidding laws where the Library may then use that information to accept or reject bids and (2) Behling & Son's bid was nonresponsive because it omitted Alternate Bid #1 and the number of days to complete the project. The Behling Appellees responded with designations, and Gar-

iup replied. After a hearing, the trial court granted the Behling Appellees' summary judgment motion, denied Gariup's partial summary judgment motion, and entered final judgment in favor of all defendants in June 2010.

Gariup now appeals.

### Discussion and Decision

We restate Gariup's arguments to be that the trial court erred by granting summary judgment in favor of the CSK and Behling Appellees and denying its partial summary judgment motion because: (1) Gariup's claim was properly brought under Indiana Code section 24–1–2–3 of the Indiana Antitrust Act as a matter of law, even where it did not allege that the Library, the governmental entity, was a party to the collusion and (2) genuine issues of material fact exist from which a factfinder could reasonably infer collusion between the CSK and Behling Appellees.

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009). All facts established by the designated evidence and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind.2007).

### I. Propriety of Gariup's Claim Under the Indiana Antitrust Act

■ The purpose of the Indiana Antitrust Act is to prevent fraud and collusion in the letting of contracts and to protect trade and commerce against unlawful restraints and monopolies. *City of Auburn v. Mavis*, 468 N.E.2d 584, 586 (Ind.Ct.App.

1984). Here, Gariup filed its complaint under two sections of the Indiana Antitrust Act. Indiana Code section 24–1–2–3 provides, "A person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition for the letting of any contract for private or public work, commits a Class A misdemeanor." Indiana Code section 24–1–2–7(a), in turn, provides a private right of action allowing treble damages, costs, and attorney's fees to "[a]ny person whose business or property is injured by a violation of this chapter."

■ On appeal, the parties debate whether Gariup's claim was properly brought under Section 24–1–2–3 of the Antitrust Act as a matter of law where it did not allege that the Library, the governmental entity, was a party to the collusion. The CSK and Behling Appellees cite *Shook Heavy & Environmental Construction Group v. City of Kokomo*, 632 N.E.2d 355 (Ind.1994), to support its proposition that such a claim must allege collusion with the governmental entity. In that case, an unsuccessful bidder sought to enjoin a city from awarding a contract on grounds that deficiencies in the successful bidder's bid caused that bid not to be the lowest responsible and responsive bid. *Id.* at 357. In determining whether the unsuccessful bidder had a cause of action for the injunction under statutory law, our Supreme Court stated that Section 24–1–2–7 "confers on private individuals the right to challenge the award of a government contract where the governmental entity and successful bidder have engaged in collusion or fraud." *Id.* at 358. Because the unsuccessful bidder failed to allege collusion or fraud, the Court concluded that it could not challenge the award of the contract under Section 24–1–2–7. *See id.* at 359.

The CSK and Behling Appellees conclude from *Shook* that any action under Sections 24–1–2–3 and –7 requires an allegation that the governmental entity has engaged in collusion or fraud. We do not think our Supreme Court intended such a narrow reading. The issue in *Shook* was whether the unsuccessful bidder had a cause of action to enjoin the city, the governmental entity, from awarding the contract. Because governmental involvement was assumed and not debated, the Court's analysis under statutory law focused on *what* the unsuccessful bidder had to allege in order to make out a claim under the Indiana Antitrust Act—collusion or fraud—and not on *who* had to engage in the collusion or fraud. *Shook* does not limit Section 24–1–2–3 claims to those alleging collusion with a governmental entity.

Two observations of the Indiana Antitrust Act itself support this conclusion. First, Section 24–1–2–3 does not specify that the "person" engaging in a scheme, contract, or combination to restrict bidding must collude with a governmental entity.

Second, Section 24–1–2–4 illustrates a situation in which a Section 24–1–2–3 violation does not include any wrongdoing on the part of the governmental entity: "If there shall be collusion or fraud of any kind or character among the bidders at the letting of any contract . . . as provided in section 3 of this chapter, then the principal who lets the contract . . . shall not be liable for such letting or on account of said contract . . . to the successful bidder to whom the contract . . . was let . . . if [that] bidder [is] a party . . . to such collusion or fraud on such contract or letting. . . ." Because Section 24–1–2–4 addresses an example of Section 24–1–2–3 in which the governmental entity has not engaged in collusion, it cannot be that a Section 24–1–2–3 claim requires an allegation of collusion with the governmental entity.

█ From the foregoing, we conclude that a Section 24–1–2–3 claim need not allege collusion with a governmental entity. Gariup's claim was therefore properly brought under Section 24–1–2–3 as a matter of law where it alleged collusion between the CSK and Behling Appellees.

## II. Collusion

Gariup next contends that the trial court erred by granting summary judgment in favor of the CSK and Behling Appellees and denying its partial summary judgment motion because there are genuine issues of material fact as to the collusion between the CSK and Behling Appellees.

The premise of Gariup's claim is that because Szany and Behling are close personal friends and because CSK had control over the bid procedures, CSK manipulated the bid procedures so that the Library would award Behling & Son the contract. To support its claim, Gariup looks to Indiana's public bidding laws and various actions of the CSK and Behling Appellees.

### A. Indiana's Public Bidding Laws

Gariup first argues that violations of Indiana's public bidding laws raise genuine issues of material fact as to the collusion between the CSK and Behling Appellees.

Indiana's public bidding laws set forth certain procedures to be followed when awarding public work contracts. They provide in pertinent part:

(8) . . . [T]he board shall:

    (A) award the contract for public work or improvements to the lowest responsible and responsive bidder; or

    (B) reject all bids submitted.

   *   *   *   *   *   *

**(10)** In determining whether a bidder is responsive, the board may consider the following factors:

(A) Whether the bidder has submitted a bid or quote that conforms in all material respects to the specifications.

(B) Whether the bidder has submitted a bid that complies specifically with the invitation to bid and the instructions to bidders.

(C) Whether the bidder has complied with all applicable statutes, ordinances, resolutions, or rules pertaining to the award of a public contract.

Indiana Code § 36–1–12–4(b). The purpose behind competitive bidding requirements is to safeguard the public against fraud, favoritism, graft, extravagance, improvidence, and corruption and to ensure honest competition for the best work or supplies at the lowest reasonable cost. *Schindler Elevator Corp. v. Metro. Dev. Comm'n,* 641 N.E.2d 653, 657 (Ind.Ct.App. 1994). Where a board is vested with discretionary power to enter into public contracts pursuant to competitive bidding, an honest exercise of such discretion will not be disturbed by the courts. *See Irwin R. Evens & Son, Inc. v. Bd. of Indianapolis Airport Auth.,* 584 N.E.2d 576, 585 (Ind. Ct.App.1992).

In order for a bid on a public work contract to be responsive, the bid must conform substantially to those specifications set forth in the invitation to bid. *Schindler,* 641 N.E.2d at 657. A minor variance in a bid will not render the bid invalid. *Id.* A material variance, however, requires that the awarding body reject the bid as unresponsive. *Id.* A material variance had been defined as a variance which affords one bidder a substantial advantage not available to other bidders and which destroys the competitive character of the bidding process. *Id.*

Before discussing Gariup's specific allegations of public bidding violations, we first examine the necessary items to make a bid responsive. The Instructions to Bidders in the project manual for the Munster project specifically stated that the contract would be awarded to the lowest responsive and responsible bidder "complying with the conditions of the advertisement for bids." The Advertisement for Bids, in turn, directed each bidder to submit a bid on Indiana State Form 96, a non-collusion affidavit, a financial statement, a satisfactory bid bond, and a complete list of subcontractors within twenty-four hours of the bid due date and time. We conclude, as did Attorney Kelly, that each of these items was required for a responsive bid.

### 1. Timely Subcontractor List

Gariup claims that CSK improperly required each bidder to submit its subcontractor list after bid opening where that information could be used to reject bids. Gariup cites *Schindler Elevator Corp. v. Metropolitan Development Commission,* 641 N.E.2d 653 (Ind.Ct.App.1994), to support this claim. In *Schindler,* the project manual for installation of elevators at Indianapolis's Circle Centre Mall informed bidders that each bid must include a completed schedule of minority-business-enterprise/women-business-enterprise ("MBE/WBE") participation listing the MBE/WBE contractors that the bidder intended to use on the project. *Id.* at 657. Goals for MBE/WBE participation were set at 13% and 2% respectively. *Id.* The instructions further provided that the MBE/WBE participation schedule must illustrate obtaining the goal or good faith efforts to obtain maximum participation below the stated goal. *Id.*

Montgomery Elevator Company's bid, which was the lowest bid submitted, included a completed participation schedule designating only one MBE subcontractor

and also attached a letter detailing Montgomery's efforts to secure MBE/WBE subcontractors and reach participation goals. *Id.* at 657–58. Applying a set of standards in determining whether a contractor has shown a good faith effort to meet MBE/WBE participation goals, the City concluded that Montgomery had satisfied the bidding requirements by making a good faith effort to reach MBE/WBE participation goals before submitting its bid. *Id.* at 658. Although the City had determined that Montgomery's bid was responsive, it nonetheless requested that Montgomery continue its attempts to increase MBE/WBE participation. *Id.* at 659. In response, Montgomery submitted post-bid-opening changes to its participation schedule increasing the level of MBE/WBE participation in the project. *Id.* The contract was subsequently awarded to Montgomery. *See id.* at 655, 659. A City representative later testified that, although Montgomery's participation schedule was responsive at the time of bid opening, the City did not approve the schedule until Montgomery increased MBE/WBE participation because the City wanted to "turn the screws" on Montgomery to try to get more participation in the project. *Id.* at 660.

On appeal, Schindler Elevator Corporation, one of the unsuccessful bidders, claimed that Montgomery's bid was unresponsive because it contained material variances with regard to MBE/WBE participation goals and that the City unlawfully allowed Montgomery to supplement its bid after bid opening. *Id.* at 656. This Court concluded that the record supported the determination that Montgomery's bid was responsive with regard to MBE/WBE requirements as of the bid-opening date because it had established a good faith effort to obtain maximum MBE/WBE participation. *Id.* at 659. The Court further concluded that, although a bidder may not

make post-bid-opening changes to an unresponsive bid in order to make the bid responsive, Montgomery's post-bid-opening changes were made to an already responsive bid and therefore were not attempts to convert an unresponsive bid into a responsive bid. *Id.* at 660.

Gariup explains *Schindler* in this manner: "In asking the low bidder to submit participation schedules showing the use of more minorities and women *after* the bids were open, the party pressuring for the post-opening changes was 'trying to turn the screws on them' and holding them 'hostage' via the post bid requirements. Such post-bid-opening pressure applied after the bid opening could not change a responsive bid into an unresponsive bid." Appellant's Br. p. 21 (citations omitted). Gariup then associates itself with Montgomery, claiming that CSK "turned the screws" on Gariup by requiring a subcontractor list after bid opening even though its bid was responsive at the time of bid opening.

Gariup's analysis of *Schindler* is flawed. In *Schindler,* Montgomery's bid was already responsive at the time of bid opening, and the City held out on awarding the contract to encourage Montgomery to increase MBE/WBE participation. On the other hand, Gariup's bid was not responsive, nor was any other bid responsive, at the time of bid opening. The Advertisement for Bids without question made the subcontractor list necessary to any responsive bid, and that list was not due until after the bids were opened. *See* Appellees' App. p. 24 ("Bidders shall submit to the [Library] within 24 hours from the bid due date and time a complete list of all sub-contractors to be awarded contracts on this project. Bidder's bid may be rejected if the sub-contractors list is not submitted as requested in accordance with the Bid

Documents.").[1] CSK did not "add[ ] on" any requirements after the bids were opened, Appellant's Br. p. 21, as those requirements clearly existed before the bids were opened.

Gariup's continues that "[i]f Gariup had not been delayed in its submission, it is likely that CSK would have discovered a 'conflict' with one of the subcontractors on the list, giving itself a veritable plethora of ways in which to control which bid 'became' the 'most responsive' bid." *Id.* at 21–22. To this we respond only that Gariup *was* late in its submission, and therefore any speculation as to what CSK would have done without any basis in the evidence is not reviewable here.

We conclude that the post-bid-opening subcontractor list requirement does not violate our public bidding laws, much less raise a genuine issue of material fact from which a factfinder could reasonably infer collusion.

### 2.  Responsive/Unresponsive

■  Gariup next claims that its bid was responsive and Behling & Son's bid was unresponsive at the time the bids were read.  For support, Gariup cites another portion of *Schindler* "for the simple notion that a bid is deemed responsive or unresponsive at the time that it is opened and publicly read." *Id.* at 24.  We find no such proposition advanced in that case.  There, each bidder was required to submit an affirmative action plan *with* its bid package.  *See Schindler,* 641 N.E.2d at 661.  This Court concluded that the court below correctly determined that Montgomery's bid was responsive to affirmative action plan requirements "as of the bid opening date." *Id.* at 662.  Because in *Schindler* the affirmative action plan had to be submitted with the bid package, *Schindler* does not stand for the general proposition that a bid is always deemed responsive or unresponsive at the time of bid opening. As noted above, a responsive bid here required a complete list of subcontractors within twenty-four hours of the bid due date and time.  Unlike *Schindler,* the bids here were responsive only if the bidder timely submitted its subcontractor list.

Although Gariup's bid included Indiana State Form 96, a non-collusion affidavit, a financial statement, and a satisfactory bid bond, Gariup failed to timely submit its subcontractor list.  We decline to find, as Gariup asserts, that its untimely submission was a minor variance in the bid where the Advertisement for Bids highlighted that a bid could be rejected if the subcontractor list was not submitted as requested.  Gariup's bid was thus unresponsive. Behling & Son, on the other hand, timely submitted its list as well as complied with the other requirements set forth in the Advertisement for Bids. Its bid was thus responsive.

Nonetheless, Gariup notes that just as in *Schindler,* it demonstrated good faith in complying with timely submission of the

---

1.  Other sections of the project manual similarly instructed each bidder to submit a list of subcontractors:

    B.  POST BID SUBMISSION REQUIRE-MENTS

      1.  Bidders shall submit their proposed subcontractor's list to [CSK].

    Appellees' App. p. 25 (Bid and Post Bid Submission Requirements).

    1.02  SUBCONTRACTOR'S LIST

      A.  Each contractor submitting a prime bid shall submit a complete list of all sub-contractors to be awarded contracts on the project within 24 hours of bid due date and time.  The list shall list only one subcontractor for each work category.  The contractor's bid may be rejected if the subcontractor's list is not submitted as requested. The successful bidder's award of subcontractor's contracts shall not deviate from the subcontractor's list as submitted.

    *Id.* at 31 (Submittals).

subcontractor list by being only one hour and twelve minutes late. Unlike *Schindler*, however, where the instructions to bidders provided that a bid was responsive with regard to MBE/WBE participation schedules if it demonstrated good faith efforts to obtain the maximum participation, the Advertisement for Bids here provided no similar "good faith" language in the provision dealing with subcontractor lists. In short, Gariup's bid was unresponsive, and allowing Gariup's bid to be cured because its list was submitted shortly after the deadline would impermissibly convert an unresponsive bid into a responsive one.

■ Gariup then insists that Behling & Son's bid was unresponsive because it did not include a price for Alternate Bid #1 or the number of days to complete the project. The Advertisement for Bids did not make Alternate Bid #1 or the number of days to complete the project necessary for a responsive bid. Thus, the lack of these items cannot be material variances in the bid. Further, as in *Schindler*, where Montgomery supplemented its already responsive bid with schedules reflecting increased MBE/WBE participation, it was not improper for Behling to supplement its bid with a price for Alternate Bid #1 or the number of days to complete the project when it timely submitted its subcontractor list.

■ Gariup also takes issue with the language in Attorney Kelly's letter to the Library concluding that Behling & Son's bid was "the lowest and most responsive bid," Appellees' App. p. 33, which was then repeated in CSK's letter to the Library, *id.* at 34 ("lowest most responsive and responsible bidder") and the Library's meeting minutes, Appellant's App. p. 118 ("the lowest and most responsive bid"). We agree with Gariup that the relevant inquiry in awarding the contract was whether the bid was "the lowest responsible and respon-

sive" bid, *see* Ind.Code § 36–1–12–4(b)(8)(A) ("[T]he board shall ... award the contract for public work or improvements to the lowest responsible and responsive bidder...."), not whether the bid was the most responsive bid. *See Schindler*, 641 N.E.2d at 658 ("Th[e proper] standard sets a minimum threshold for responsiveness; it does not require, or authorize, a search for the 'most' responsive bidder."). As Attorney Kelly's letter explains, however, Behling & Son's bid was responsive while Gariup's bid was unresponsive for failing to timely submit its subcontractor list. Because it is clear that Attorney Kelly used the proper standard, any error in language is harmless.

The evidence does not support a violation of our public bidding laws or raise a genuine issue of material fact from which a factfinder could reasonably infer collusion.

### 3. Justification of Award

■ Gariup's final argument regarding Indiana's public bidding laws is that the Library did not state the factors used to justify the award to Behling & Son. Such a statement is necessary when the contract is not awarded to the lowest bidder. *See* Indiana Code section 36–1–12–4(b)(9) ("If the board awards the contract to a bidder other than the lowest bidder, the board must state in the minutes or memoranda, at the time the award is made, the factors used to determine which bidder is the lowest responsible and responsive bidder and to justify the award.").

The Library's minutes state, "It was moved by Dakich and seconded by Gilbertson that the Board award the bid for additions and renovations to the Munster Branch to Gil Behling & Son, Inc. as recommended by the library's attorney and architect as being the lowest and most responsive bid. The vote in favor was

unanimous." Appellant's App. p. 118. Instead of finding fault with the Library for failing to state factors justifying the award, however, Gariup argues that CSK tainted and skewed the bidding process. It states, "Kelly's recommendation ... was just a rubber stamp of the stance dictated to him ·by CSK." Appellant's Br. p. 26. We find no evidence in the designations whatsoever to support this claim. Attorney Kelly's recommendation to the Library shows that he carefully parsed the project manual to determine what was necessary for a responsive bid and found Gariup's bid unresponsive for failure to timely submit its subcontractor list. CSK then wrote its own recommendation to the library "based upon [Kelly]'s recommendations." Appellees' App. p. 34.

In any event, we decline to find any genuine issue of collusion between the CSK and Behling Appellees from evidence that the Library failed to state factors used to justify the award to Behling & Son.

We conclude that the Gariup has failed to designate any evidence regarding Indiana's public bidding laws that raises a genuine issue of material fact from which a factfinder could reasonably infer collusion.

### B. Other Evidence of Collusion

Gariup then argues that other evidence raises a genuine issue of material fact as to collusion between the CSK and Behling Appellees. We address each in turn.

Gariup first claims that the close personal friendship between Szany and Behling raises a genuine issue of collusion. The only designated evidence Gariup points to on this issue is Szany's deposition testimony stating that Behling is a close personal friend and that they have vacationed and attended sporting events together. The fact that Szany and Behling are close friends without any evidence that the friendship impacted Kuhn's actions as the project architect or the bidding process is insufficient to raise an issue for trial. *See Beatty v. LaFountaine*, 896 N.E.2d 16, 20 (Ind.Ct.App.2008) (guesses, supposition, and conjecture are insufficient to create a genuine issue of material fact to defeat summary judgment), *trans. denied.*

Gariup next claims that the fact that CSK told Attorney Kelly that Gariup's subcontractor list was late while failing to mention that Behling & Son's bid did not include a price for Alternate Bid # 1 raises a genuine issue of collusion. We disagree. A timely subcontractor list was necessary for a responsive bid while Alternate Bid # 1 pricing and the number of days to complete the project were not. It was thus reasonable for CSK, the party receiving the lists, to inform Attorney Kelly that Gariup's bid was late. Moreover, Attorney Kelly reviewed all of the bid materials and was capable of seeing that Behling & Son's bid left out those items. What CSK did or did not tell Attorney Kelly on this point does not raise a genuine issue for trial.

Gariup then claims that CSK's recommendation to the Library to reject Alternate Bid # 1 when that element was missing from Behling & Son's original bid raises a genuine issue of collusion. The Library was entitled to investigate the additional cost of additional choices without binding itself absolutely. This evidence does not raise a genuine issue for trial.

Gariup also claims that the fact that Kuhn reminded both Gariup and Behling & Son to submit subcontractor lists when Gariup had the lowest bid raises a genuine issue of collusion. Again, we disagree. Because both bids were the lowest submitted, it was reasonable for Kuhn to remind both contractors to submit their lists in the event, as occurred here, that the lowest

bidder failed to timely submit its subcontractor list.

Gariup's overarching claim is that CSK's control over bidding procedures, where Szany and Behling were friends, raises a genuine issue of collusion. The designated evidence shows that the contract between CSK and the Library provided that CSK "shall assist" in the bidding process and that CSK did in fact coordinate that process. However, none of the facts of this case, taken alone or as a whole, raises a genuine issue of material fact from which a factfinder could reasonably infer collusion. We acknowledge that collusion is difficult to prove; however, to defeat a summary judgment motion Gariup was required to show more than speculation.

The designated evidence boils down to the fact that the Advertisement for Bids plainly made a timely subcontractor list necessary for a responsive bid, and Gariup, although the lowest bidder, failed to submit a responsive bid.

### III. Appellate Attorneys' Fees

As a final matter, the CSK and Behling Appellees request appellate attorneys' fees pursuant to Indiana Appellate Rule 66(E), which provides in pertinent part, "The Court may assess damages if an appeal ... is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." The Court of Appeals uses extreme restraint in awarding appellate damages because of the potential chilling effect upon the exercise of the right to appeal. *In re Estate of Carnes*, 866 N.E.2d 260, 267 (Ind.Ct.App. 2007). We do not condone Gariup's failure to include the motions for summary judgment or the designations listing the exhibits; however, we conclude that the deficiency was not in flagrant disregard of our appellate rules. Further, we cannot say that Gariup's appeal is frivolous where it successfully contended that a Section 24–1–2–3 claim need not allege collusion with a governmental entity. We therefore decline to award appellate attorneys' fees.

Affirmed.

BAKER, J., and BARNES, J., concur.